**UNITED STATES of America, Appellee,**

v.

**Johnny Robert RILEY, Appellant.**

**No. 75–1561.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1975.

Decided Feb. 9, 1976.

Rehearing and Rehearing En Banc Denied March 2, 1976.

Charles M. Hinton, Jr., Pine Bluff, Ark., for appellant.

O. H. Storey, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

Johnny Robert Riley appeals his conviction of two counts of transporting stolen motor vehicles in interstate commerce. 18 U.S.C. § 2312. A third count was dismissed by the trial court at the conclusion of the government's case. We affirm the judgment of conviction.

On January 11, 1974, a 1974 Chevrolet Vega was discovered on the property of the Claypool Hunting Club near Harrisburg, Arkansas. The car was determined to be stolen from Poplar Bluff, Missouri. On the day the stolen car was discovered, a state trooper investigating its theft interviewed the caretaker of the club, Johnny Robert Riley, to see if he had any information about the car. Riley indicated that he had told a friend of his she could leave the car there, and expressed surprise when he was told the vehicle was stolen.

About an hour after speaking with the patrolman, Riley drove a beige and white 1973 Chevrolet pickup truck to his daughter's farm which is located in a remote area 25 miles from Harrisburg. He asked if he could leave the truck there, since he had decided to visit his son in California. This was the first she had heard that her father was planning to visit California, but she consented to let him leave the truck there. Riley did not go to California, however.

At about the same time as he was interviewed about the Vega, Riley contacted a dragline operator and asked whether he could bury a car so that it would never be found.

Five days after he had spoken with the state trooper about the stolen Vega, on January 16, 1974, the pickup truck which Riley had left at his daughter's house was determined by the Cross County Sheriff's Office to be a vehicle stolen from Memphis, Tennessee. On the same day, Riley claimed he sold a white over blue 1972 Cadillac El Dorado.

On February 15, 1974, the Poinsett County, Arkansas Sheriff's Office was notified that a burned 1972 Cadillac El Dorado had been found in a field about 25 miles from Harrisburg. The car had apparently been in this location for at

least a couple of weeks. It was determined that the burned automobile had been stolen from Memphis, Tennessee in 1972.

Riley was indicted for possession of the stolen Vega, the stolen pickup and the stolen Cadillac. At trial the above undisputed facts were established, and further evidence as to each vehicle was introduced.

### Count 1: the pickup truck

The truck was stolen November 29, 1973, and Riley testified that he bought it at a cafe on December 9, 1973, from a stranger named Bradshaw, for $2800 cash. He produced an Alabama "Motor Vehicle Registration and Tag Receipt" which he allegedly obtained from Bradshaw. During the times in question, Alabama was a non-title state, and proof of ownership was not required to register and license a motor vehicle. The receipt indicated that Bradshaw lived in Tuscumbia, Alabama, but an FBI agent testified that Bradshaw did not live at the address on the tag and he had not been able to find anyone by that name in Tuscumbia. A friend of Riley's testified that at one time Riley told him he had bought the truck at an auction and another time he had said he bought it at the cafe. The defendant had not obtained an Arkansas title or license for the pickup.

### Count 2: the Cadillac

The burned Cadillac had been stolen on October 23, 1972. On October 27, 1972, an Alabama tag receipt for the car had been issued to Calvin Thompson of Andalusia, Alabama. This was ordered by telephone from Jonesboro, Arkansas, and was mailed to Calvin Thompson in Truman, Arkansas. FBI agents were unable to find anyone named Calvin Thompson in either Andalusia, Alabama or Truman, Arkansas. A Poinsett County Arkansas Deputy Sheriff testified that there were three spots on the left rear quarter panel of the burned vehicle which were lighter in color than the rest of the car. He recognized these spots as corresponding to three spots where paint had been removed from the fender of

Johnny Riley's car when he saw it in a body shop in Harrisburg, and in this way he identified the burned car as Riley's. The stolen car had originally been white and a paint sample taken after it had been burned showed that a coat of white paint had been covered by three coats of blue. Various witnesses testified to seeing Riley drive a white Cadillac at the hunting club and elsewhere in late 1972 and early 1973. A body shop had painted the bottom of a "light beige" Cadillac blue for Riley in early 1973, and had applied a second coat of blue later in 1973. There was testimony that Riley had driven a white over blue Cadillac in late 1973. The evidence showed that Riley had not registered the Cadillac in Arkansas. Instead he placed a master dealer's license plate on the car, which he bought through a friend in the used car business; Riley himself never engaged in the business, although he loaned the dealer money. In Arkansas, a master dealer's tag is used on cars bought for resale, and can be placed on any car with no requirement that the car be registered. A friend of Riley's stated that after Riley was arrested he told him that he had to get rid of the Cadillac because he had bought it like he bought the truck, and there could be something wrong with it.

Riley testified he had not owned a white Cadillac during the times in question, but he bought a white over blue 1972 Cadillac from a stranger named Calvin Thompson for $5500 cash in July of 1972 and resold it to Thompson for $4000 cash on January 16, 1974. He stated that a friend of his, Choice Ursery, was with him when he bought the car, but he was dead at the time of trial. Riley claimed Thompson had given him an Arkansas title for the car, but the Arkansas State Revenue Department Motor Vehicle Section had no record of a Cadillac ever being registered by Calvin Thompson. Riley also testified that he believed Thompson lived somewhere near Truman, Arkansas, but as previously mentioned the FBI could find no such person in that area. The defendant stated that when he had asked the dragline operator to bury the car he was refer-

ring to some wrecks located on some of his property.

*Count 3: 1974 Chevrolet Vega*

The Vega which was found at the Claypool Hunting Club on January 9, 1974, had been stolen December 19, 1973, from Poplar Bluff, Missouri. Riley stated he had allowed a friend to put the car there. Riley managed the club, whose members were primarily from Memphis, Tennessee. The club was about 1200 acres and included a reservoir. Only one road led to it and the club was enclosed by a fence. The gate to the club was usually kept locked. The government attempted to show Riley's constructive possession of the Vega by proving that only Riley and a few others in the Harrisburg area had keys, besides the members of the club who lived in Memphis. However, there was evidence that several people had keys and a key was often left at the gate. There was also evidence that the gate wasn't always locked. The district judge dismissed Count 3 at the conclusion of the government's evidence.

*Prejudicial Joinder of Offenses*

Riley first contends that the trial judge committed prejudicial error in refusing to sever Count 3, which ultimately was dismissed, from the other two counts. Fed.R.Crim.P. 8(a) allows joinder of offenses "of the same or similar character", but Rule 14 provides for relief from prejudicial joinder. Where the evidence overlaps and the offenses are similar and occurred over a relatively short period of time, joinder is usually proper. *United States v. Hoog*, 504 F.2d 45, 49 (8th Cir. 1974), *cert. denied*, 420 U.S. 961, 95 S.Ct. 1349, 43 L.Ed.2d 437 (1975). The question of prejudice arising from joinder is one for the trial judge, and we may only reverse upon a finding of clear prejudice and abuse of discretion. *Johnson v. United States*, 356 F.2d 680, 682 (8th Cir.), *cert. denied*, 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966). In this case the evidence concerning the stolen Vega, and Riley's actions in hiding the truck and disposing of the car after he had been questioned about the Vega,

would be admissible to show that he knew the Cadillac and truck were stolen, or lack of mistake. *E. g. United States v. Oliver*, 525 F.2d 731 (8th Cir. 1975); *United States v. Calvert*, 523 F.2d 895, 908 (8th Cir. 1975). Under these circumstances no greater prejudice would result from joinder of the third count than from its admission into evidence to show Riley's state of mind. *Bradley v. United States*, 140 U.S.App.D.C. 7, 433 F.2d 1113, 1118–1119 (1969); *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964). Therefore we find no abuse of discretion in denying the motion to sever.

*Sufficiency of the Evidence as to Count 2*

Riley argues that the district court erred in denying his motion for judgment of acquittal of the offense concerning the Cadillac. On review the evidence is viewed in the light most favorable to the verdict, and all reasonable inferences which might be drawn in its favor are accepted as established. *Giblin v. United States*, 523 F.2d 42, 44 (8th Cir. 1975); *United States v. Kelton*, 519 F.2d 366, 367 (8th Cir. 1975). Although the defendant maintained that the Cadillac seen in his possession was not the same one which was stolen and later found burned, there was a great deal of circumstantial evidence to the contrary. The jury could believe that Riley possessed a white 1972 Cadillac shortly after the car in question was stolen, that he had the bottom of the car painted blue, and that the deputy sheriff identified the stolen car as the one Riley had possessed by the three distinctive spots which were still visible on the left rear fender after it was burned. This circumstantial evidence, buttressed by the other evidence previously detailed, was sufficient to show that Riley possessed the stolen vehicle, *United States v. De Verse*, 464 F.2d 80, 83 (8th Cir.), *cert. denied*, 409 U.S. 988, 93 S.Ct. 342, 34 L.Ed.2d 253 (1972). His surreptitious conduct after he was interviewed about the stolen Vega and the fact of possession of the recently stolen vehicle together with the other evidence were suf-

ficient to allow the jury to find that Riley knew the Cadillac was stolen and that he had transported it from Tennessee to Arkansas. *United States v. Thundershield,* 478 F.2d 241, 242–243 (8th Cir.), *cert. denied,* 414 U.S. 851, 94 S.Ct. 145, 38 L.Ed.2d 100 (1973); *United States v. Wright,* 431 F.2d 726, 727 (8th Cir. 1970).

*Suppression of Evidence*

█ Riley's final contention is that the government's failure to disclose an FBI agent's written report deprived him of a fair trial.

Before trial the defense indicated that Choice Ursery, a friend of the defendant, would testify at trial that he was with Riley when he bought the Cadillac. The government attorney then sent an FBI agent to interview Ursery on February 26, 1975. Ursery denied any knowledge of the acquisition of the Cadillac at that time and said he had no intention of testifying in court for the defendant. The following day, however, Ursery telephoned the FBI and said he had "lied" the day before because he did not want to get involved and was planning to go to Oklahoma to visit his grandchildren. He stated that he had been with Riley in July of 1972 when he bought a white over blue 1972 Cadillac from a man in Truman, Arkansas. After both the interview on the 26th and the telephone interview of the 27th, the FBI agent reduced the substance of the conversations to writing. These documents were never given to Riley or his counsel. Mr. Ursery died before trial.

Riley testified on direct examination that Ursery had accompanied him when he bought the Cadillac from Calvin Thompson in July of 1972. On cross-examination, Riley pointed out that Ursery had died; otherwise, according to Riley's testimony, he would have corroborated the defendant's story. Riley then stated that Ursery had told the FBI agent "just what I'm telling you." Transcript, 291. This colloquy followed:

Q. You know he told Mr. Stewart this?

A. Yes, sir.

Q. Do you also know that the day before that he told Mr. Stewart he didn't know anything about it?

A. (No response)

Q. Do you also know that?

A. Yes, sir, he told me that.

Q. Mr. Ursery told Mr. Stewart the first time Mr. Stewart asked him that he didn't know anything about your Cadillac, didn't he?

A. That's what he told me,—

Q. Okay.

A. —and you know why he told me that?

Q. And then the second time around he called Mr. Stewart back, did he not?

A. That's—that's right.

Q. Okay. And then he told him that he was with you, is that correct?

A. That's right, he did.

Q. Was this after he had talked to you?

A. No, sir. He come and told me that he called Mr. Stewart. He had—he had some children—his only daughter lived out in Oklahoma, and her husband is in the Air Force, and he's got a grandson and a granddaughter, and he was going out there, and when I—he told me Wednesday, he said he wasn't going—he said he didn't think he was going to live long, and he was going to go out there and see his grandson, and that's what he told me. I'm sure he told Mr. Stewart the same thing, that he was going out there.

Transcript, 291–292.

It is clear that not only did the defendant first notify the prosecution of the availability of this witness but also that the defendant was aware of both FBI interviews and of the substance of Mr. Ursery's statements on each occasion. In fact he was allowed to use these hearsay statements to corroborate his own testimony. Under these circumstances there was no suppression of material evidence. *DeBerry v. Wolff,* 513 F.2d 1336, 1340 (8th Cir. 1975); *see, Og-*

**772**

*den v. Wolff,* 522 F.2d 816, 823–825 (8th Cir. 1975).

We affirm the judgment of conviction.