UNITED STATES of America, Appellee,

v.

**Zack O'Farrell HASTINGS, Appellant.**

**No. 78–1116.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1978.

Decided May 25, 1978.

Rehearing Denied June 12, 1978.

---

STEPHENSON, Circuit Judge.

Zack O'Farrell Hastings appeals from his conviction by a jury.[1] He was found guilty of transferring counterfeit obligations in violation of 18 U.S.C. § 473, as charged in Count 1 of a four-count indictment, and of counterfeiting obligations of the United States, in violation of 18 U.S.C. § 471, as charged in Count 3 of the indictment. On appeal Hastings asserts four claims of error: denial of his motion to sever the counts of the indictment and grant separate trials on each count; restricting his cross-examination of government witnesses James Ronnie Jackson and Wallace D. Counselman, Jr.; and refusal to give his requested instruction concerning the weight to be given oral admissions made outside of court. We affirm.

Hastings was charged by indictment with three counts of transferring counterfeit obligations and one count of manufacturing counterfeit obligations. Government witness James Ronnie Jackson was granted immunity in exchange for his testimony. Earlier he had been sentenced to an indeterminate term under the Youth Corrections Act upon his plea of guilty to transferring counterfeit $100 bills he received from Hastings. Jackson testified that in 1975 he passed counterfeit bills given to him by Hastings at various locations in the central United States, including two at the Walmart Store in Dexter, Missouri. It was these two counterfeit $20 federal reserve notes that constituted the substance of Count 1 of the indictment. Jackson also testified that Hastings had given him numerous $100 counterfeit federal reserve notes in 1977. These notes constituted the substance of Count 4 of the indictment. Hastings was acquitted by the jury on that count.

Michael J. McAvoy, Fenton, Mo., on brief, for appellant.

Robert D. Kingsland, U. S. Atty., and Stephen B. Higgins, Asst. U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and BECKER, Senior District Judge.*

---

* The Honorable William H. Becker, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri, presided. Hastings was sentenced to two years under the charge in Count 1 of the indictment and ten years under the charge in Count 3 of the indictment. The sentence imposed under Count 3 is to be served consecutively to the sentence imposed under Count 1 for an aggregate term of imprisonment of twelve years.

A second government witness, Wallace D. Counselman, Jr., testified under a grant of immunity. Counselman related that Hastings approached him in 1976 and suggested that they enter into an association to print counterfeit money. At that time Hastings showed Counselman some counterfeit bills he had printed in the past and stated that in the preceding two years as he would run low on money he would print counterfeit bills. Subsequently, Counselman moved into a house with Hastings in Cape Girardeau, Missouri. Counselman testified that Hastings purchased and assembled supplies for use in a counterfeiting operation. After the counterfeit $20 bills were printed, cut, and aged, Counselman stated that in early November of 1976 he took a number of them to St. Louis where he passed six at retail stores. When he attempted to pass one of these at a J. C. Penney store, its authenticity was questioned. Counselman then called Hastings to warn him not to pass any more bills. Hastings moved out of the house the next day, ending his association with Counselman. Hastings was found guilty of manufacturing this note, as charged in Count 3 of the indictment. He was found not guilty of transferring this same counterfeit note to Counselman, as charged in Count 2 of the indictment.

■ Hastings claims that the trial court erred in refusing to grant his motion to sever each count of the indictment and order a separate trial on each count. Fed.R. Crim.P. 8(a) allows the joinder of two or more offenses in the same indictment if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." In the present case each of the offenses related to the distribution or manufacture of counterfeit federal reserve notes by Hastings in southeast Missouri during a two year period. Thus, the test specified in Rule 8(a) was satisfied. *See United States v. Sanders,* 463 F.2d 1086, 1089 (8th Cir. 1972); *Johnson v. United States,* 356 F.2d 680, 682 (8th Cir.), *cert. denied,* 383 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966).

■ Fed.R.Crim.P. 14 permits the court to order severance where it appears a defendant would be prejudiced by the joinder of offenses for trial. The denial of a motion for severance under Rule 14 will be overturned by this court only upon a showing of abuse of discretion and clear prejudice. *See, e. g., United States v. Riley,* 530 F.2d 767, 770 (8th Cir. 1976). The jury acquitted Hastings on two of the four counts with which he was charged. This fact strongly rebuts Hastings' claim that he was prejudiced by the jury's inability to distinguish between the evidence presented on each separate count or that the jury cumulated evidence from one count to the next. We conclude that the trial court did not abuse its discretion in denying the motion to sever. *See United States v. Sanders, supra; Johnson v. United States, supra.*

Hastings next argues that the district court improperly restricted his cross-examination of Wallace D. Counselman, Jr. by not allowing questions concerning Counselman's arrest for armed robbery, his military record, or his misdemeanor conviction in another jurisdiction. Shortly before trial, Counselman was arrested for armed robbery, and during the course of that investigation he admitted participating in several other armed robberies. In addition, the Government filed a supplemental response to Hastings' pretrial motions which stated that Counselman had informed Government counsel that Frank Tillman had provided Hastings with money to purchase supplies for the counterfeiting operation in return for a share of the profits. Counselman further stated that he had been told by Tillman that if he implicated Tillman with Hastings in the counterfeiting venture, Tillman would inform law enforcement authorities that Counselman had committed armed robberies. The trial court did not permit cross-examination of Counselman with regard to his involvement in the bank robberies or his relationship with Tillman.

Fed.R.Evid. 608(b) permits the court in its discretion to allow impeachment of a witness by cross-examination concerning

specific instances of conduct not resulting in conviction if the conduct relates to the witness' character for truthfulness or untruthfulness. Hastings claims that his proposed cross-examination was relevant to show Counselman's character for truthfulness or untruthfulness. The district court ruled that the probative value, if any, as to Counselman's truth and veracity did not outweigh the prejudice. The district court did not abuse its discretion in so ruling. *See United States v. Young,* 567 F.2d 799, 803 (8th Cir. 1977); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 608[05] (1977).

■ Counselman was granted a less than honorable discharge from the United States Marine Corps for failure to wear his uniform. The trial court did not permit cross-examination with respect to the nature of the discharge or the events which led up to it. There was no showing that this conduct would have any relevance concerning Counselman's propensity to tell the truth. Consequently, the trial court's refusal to allow cross-examination on this point was not an abuse of discretion.

Finally, the trial court did not allow cross-examination of Counselman in regard to his misdemeanor conviction on narcotics charges in New Jersey. Fed.R.Evid. 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

In the present case, evidence of Counselman's prior conviction could only have been admitted under the second prong of this rule because the crime of which he was convicted was a misdemeanor not punisha-

ble by death or imprisonment in excess of one year.

■ At the time the federal rules of evidence were being considered by Congress, the Conference Committee adopted the present wording of Rule 609(a) as a compromise between differing House and Senate versions. In its report the Conference Committee stated:

> By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subordination of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

Conf.Rep.No.93–1597, 93 Cong.2d Sess. 9, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7098, 7103. *See also* 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶¶ 609[03a], 608[05] (1977); Black's Law Dictionary Crimen Falsi 446–47 (4th ed. 1968). We are satisfied that a conviction on a narcotics charge is not a crime which "involves dishonesty or false statement" within the meaning of Rule 609(a)(2) at least where there has been no showing that the particular prior conviction rested on facts warranting the "dishonesty or false statement" description. *See United States v. Hayes,* 553 F.2d 824, 827–28 (2d Cir. 1977); *United States v. Millings,* 175 U.S. App.D.C. 293, 535 F.2d 121 (1976).

■ In a related argument Hastings contends that the district court erred in limiting his cross-examination of James Ronnie Jackson with regard to his drug-related transactions at the time he was involved in the counterfeiting scheme. Since Jackson was not convicted on these alleged transactions, the sole basis for admission would be under Rule 608(b). Nevertheless, Hastings contends that he should have been allowed to impeach Jackson's credibility by cross-examination on this subject. Initially we note that the alleged drug transactions occurred in 1977 at approximately the same time as the events charged in Count 4 of the indict-

ment. Hastings was acquitted by the jury on that count. Thus, it is difficult to perceive how Hastings was prejudiced by the exclusion of this cross-examination. Moreover, we are satisfied that the district court did not abuse its discretion in finding that the probative value, if any, as to Jackson's truthfulness or untruthfulness did not outweigh the prejudice. *See United States v. Young, supra,* 567 F.2d at 803.

Hastings' final appeal point is that the district court erred in not giving his requested instruction B. The thrust of requested instruction B was a warning that "oral admissions, claimed to have been made outside of court by a party to any case, should always be considered with caution and weighed with great care."

■ Although the court refused to give requested instruction B, it did instruct the jury that:

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

> You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive, and state of mind, and demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters.
> * * *

> Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

> After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.

A subsequent instruction stated that the testimony of witnesses who have been granted immunity is competent evidence but cautioned that:

> One who testifies under a grant of immunity with a promise from the Government that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even though not corroborated or supported by other evidence.

> Such testimony, however, should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether the testimony may be colored in such a way as to further the witness' own interests, for a witness who realizes that he may procure his own freedom by incriminating another has a motive to falsify. After such consideration, you may give the testimony of the immunized witness such weight as you feel it deserves.

These instructions adequately advised the jury that when they were reviewing the evidence, they had the duty to carefully consider the credibility of the witnesses. When the instructions are considered as a whole, it is clear that the substance of Hastings' requested instruction B was adequately and correctly covered. Thus it was not error to refuse to give requested instruction B. *See United States v. Nance,* 502 F.2d 615, 619–20 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). *See also United States v. Porter,* 544 F.2d 936, 937–39 n. 2 (8th Cir. 1976) (no cautionary instruction is necessary when testimony is admitted as an admission).

The evidence of Hastings' guilt is strong, and no error of law appears from the record. Accordingly, the conviction is affirmed.

Affirmed.