UNITED STATES of America, Appellee,

v.

Jeffrey Thomas SCHMIDT, Appellant.

UNITED STATES of America, Appellee,

v.

Donald Joseph SCHMIDT, Jr., Appellant.

No. 81–1306, 81–1307.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 11, 1981.

Decided Oct. 29, 1981.

Rehearing Denied Nov. 23, 1981.

Smith, Juster, Feikema, Malmon & Haskvitz by J. Christopher Cuneo (argued), Minneapolis, Minn., for appellant in no. 81–1306.

John M. Lee, Asst. U. S. Atty., Ann D. Montgomery (argued), Asst. U. S. Atty., D. Minnesota, Minneapolis, Minn., Dwight L. Pringle, Legal Intern, Thomas K. Berg, U. S. Atty., Minneapolis, Minn., for appellee.

Kevin S. Burke (argued), Chestnut & Brooks, P.A., Minneapolis, Minn., for appellant in no. 81–1307.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Jeffrey Thomas Schmidt and his brother, Donald Joseph Schmidt, Jr., were convicted of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Jeffrey was also found guilty on another count of simple possession of marijuana in violation of 21 U.S.C. § 844. Jeffrey was sentenced to six months' im-

prisonment, followed by two years of probation and a two-year special parole term. Donald was sentenced to six months in a "jail-type" institution on a work release program, followed by two years of probation and a two-year special parole term.

We affirm the conviction of Jeffrey Schmidt for possession with intent to distribute, but reverse the conviction for simple possession. We affirm the conviction of Donald Schmidt.

On October 10, 1980, officers of the Hennepin County Sheriff's Department received information that Jeffrey Schmidt and his brother were selling marijuana. A deputy sought and obtained a warrant on October 14, 1980, to search Jeffrey Schmidt and his house at 630 N.E. 5th Street, Minneapolis (hereinafter the "630" warrant). Jeffrey Schmidt was immediately put under surveillance. Later that day, officers observed Schmidt driving a pickup truck with a camper-type topper; he was driving erratically, as though he were aware of their surveillance.

Jeffrey Schmidt was next seen backing the truck up to the detached garage of Donald's house. He then went into the house. Shortly thereafter, he returned to the garage, entered a side door and opened the overhead garage door. He was observed loading the rear of the truck with unidentified objects. He closed the garage door and returned inside the house.

Eventually, Jeffrey came back to the truck and drove away. It was decided at that time to stop him and execute the "630" search warrant as to his person. A squad car pulled the truck over on a public street a few blocks away from Donald's home. Jeffrey Schmidt was searched. From his pocket, the officers obtained a pipe, an airline ticket and a scrap of paper. At this same time, one of the officers looked through the windows of the camper-type topper and observed several packages wrapped in plastic garbage bags in the back of the truck.

Jeffrey Schmidt was then taken to his home, where the "630" warrant was further executed. The officers found approximately three pounds of marijuana, a scale, cheesecloth with hashish residue on it, and bags of marijuana stems and seeds. Jeffrey was placed under arrest. Donald arrived on the scene during the search of Jeffrey's home. He was arrested for visiting a disorderly house and was searched.[1]

Meanwhile, several of the officers returned to the Donald Schmidt residence and secured the house and detached garage by walking around the outside of the structures. While securing the garage, Deputy Fontana looked through the garage window and noticed a garbage bag similar to the bags previously observed in the rear of the truck.

A search warrant was then obtained for the search of the pickup truck (hereinafter the truck warrant). Upon executing this warrant, the officers found that the plastic garbage bags contained sixty pounds of marijuana.

The officers subsequently obtained a warrant for the search of Donald Schmidt's garage and house, located at 421 N.W. Broadway (hereinafter the "421" warrant). Upon executing the "421" warrant, the officers found approximately ten pounds of marijuana packaged in the plastic garbage bag in the garage and approximately twelve pounds of marijuana in the house.

On December 15, 1980, a pretrial hearing was held before a magistrate. The defendants moved to suppress the evidence obtained by the sheriff's department on the grounds that the applications for the warrants were not supported by probable cause and because the "630" search warrant application contained "material misrepresentations of fact." The magistrate recommended that the motions be denied. On January 12, 1981, the district court affirmed the magistrate's ruling, denying the defendants' motions to suppress. A jury trial was

---

1. The government concedes that this arrest and incidental search were illegal, and it did not attempt to introduce evidence gained in that search at trial.

held and both defendants were found guilty as charged.

The issues raised on appeal relate only to the pretrial motions concerning the suppression of evidence.

### I. Claims of Jeffrey Schmidt.

#### A. The "630" warrant.

█ The appellant contends that the "630" warrant application was insufficient to establish probable cause because it was based on the largely uncorroborated hearsay allegations of an undisclosed informant.[2] We agree and reverse Jeffrey's conviction for simple possession of marijuana based on evidence obtained pursuant to that warrant. An affidavit need not reflect the direct personal observations of the affiant and may be based on hearsay provided by an unidentified informant. The magistrate must, however, be informed of:

█ some of the underlying circumstances from which the informant concluded that the [narcotics] were where he claimed they were, and

█ some of the underlying circumstances from which the officer concluded that the informant * * * was "credible" or his information "reliable."

2. The "630" warrant was issued on the basis of the following affidavit:

Your affiant is a Hennepin County Deputy Sheriff assigned to the Narcotics Division. Along with your affiant's own investigation, information from a confidential reliable informant, who has within the past two-week period, given information to your affiant and another Hennepin County Narcotics Officer, on activities of several known narcotic traffickers. This information has been corroborated by your affiant. The information from the confidential reliable informant (C.R.I.) and from your affiant is as follows:

The C.R.I. has been within the premises of 630 Northeast 5th Street, Minneapolis, Minnesota, within the last 72-hour period. On this occasion, the C.R.I. has made a controlled purchase of marijuana which was represented to the C.R.I. as marijuana by Jeffrey Schmidt. The C.R.I. has also observed a large quantity of marijuana in the premises of 630 Northeast 5th Street, and this quantity was represented to be for sale at a future date, to the C.R.I.

*Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964). *See United States v. Holmes*, 594 F.2d 1167, 1170 (8th Cir.), *cert. denied*, 444 U.S. 873, 100 S.Ct. 154, 62 L.Ed.2d 100 (1979).

The defendant concedes that the "basis of knowledge" aspect of the *Aguilar* test has been satisfied by the informant's personal observation of marijuana at Jeffrey Schmidt's house within seventy-two hours prior to the issuance of the warrant. *See United States v. Deggendorf*, 626 F.2d 47, 51 (8th Cir.), *cert. denied*, 449 U.S. 986, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980); *United States v. Fleming*, 566 F.2d 623, 625 (8th Cir. 1977). The question is, then, whether the "veracity of the informant" was substantiated.

█ The veracity of the informant is established under *Aguilar* when the warrant application indicates that the informant has given reliable information in the past, *McCray v. Illinois*, 386 U.S. 300, 303–304, 87 S.Ct. 1056, 1058, 18 L.Ed.2d 62 (1967); *United States v. Skramstad*, 649 F.2d 1259, 1262 (8th Cir. 1981), or by a showing that the accuracy of the information was borne out by independent corroboration by the authorities. *See Spinelli v. United States*, 393 U.S. 410, 416–417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969); *Drap-*

Your affiant has taken the C.R.I. past the address of 630 Northeast 5th Street, within the last 72 hours. At that time, the C.R.I. positively identified the address of 630 Northeast 5th Street, to be the address the C.R.I. had observed large quantities of marijuana.

Your affiant, through his own investigation, has learned from Northern States Power Company that the utilities for the address of 630 Northeast 5th Street, Minneapolis, Minnesota, lists to a Jeffrey T. Schmidt.

Through your affiant's experience and information gathered, your affiant believes there to be a quantity of marijuana at the address of 630 Northeast 5th Street, Minneapolis, Minnesota. Due to the above facts, your affiant requests a day-time/night-time search warrant be granted for the address of 630 Northeast 5th Street, unattached garage, and any other outer buildings on the premises, and for the person of Jeffrey Thomas Schmidt.

er v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); United States v. Hunley, 567 F.2d 822, 825 (8th Cir. 1977). Considering the negligible "track record" of the informant in tandem with the paucity of "detail corroboration" here, we find that the "630" warrant falls short of what is required by Spinelli and Aguilar.

The government maintains that the statement in the affidavit that the informant had provided correct information to the police "within the past two-week period" was sufficient to establish the informant's "track record" under Aguilar. This Court encountered an almost identical allegation of veracity in United States v. Skramstad, supra, 649 F.2d at 1262: " * * * the confidential reliable informant (CRI) has also given information on the activities of known narcotics traffickers, which has been corroborated by your affiant." We agree with the Court in Skramstad that such general allegations are "uninformative and conclusory" and "[do] little to establish the reliability of the informant." Id.[3] We further note that there is no indication that the prior information allegedly provided by the informant even involved illegal or incriminating conduct. Id.

■ The government erroneously relies on cases where the affiant involved had also sufficiently detailed and corroborated the information given by the informant. See United States v. Muckenthaler, 584 F.2d 240, 244–245 (8th Cir. 1978); United States v. Scott, 545 F.2d 38, 40 (8th Cir. 1976), cert. denied, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977). Evidence of "detail corroboration" in the "630" warrant application is limited to the affiant's verification that the house where the informant personally observed the marijuana belonged to Jeffrey Schmidt. This evidence, without more, lacks probative value. See United States v. Skramstad, supra, 649 F.2d at 1260–1262.[4]

**B. The truck warrant.**

Jeffrey further contends that the truck warrant was invalid and, therefore, that evidence of the sixty pounds of marijuana seized from the pickup truck should have been suppressed at trial. We find that the truck warrant was based on sufficient probable cause, and affirm Jeffrey's conviction for possession with intent to distribute.

Jeffrey argues that because the police stopped the truck in order to execute the invalid "630" warrant as to his person, any information obtained during that stop was "tainted" and could not be used to establish probable cause to search the truck.

■ In our view, when Jeffrey Schmidt began to drive away from the Donald Schmidt residence and the decision was made to stop the truck, the circumstances presented adequate grounds for an investigative stop of the nature upheld in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1922, 32 L.Ed.2d 612 (1972); United States v. Sanders, 631 F.2d 1309, 1311–1312 (8th Cir. 1980), cert. denied, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981); United States v. Stevie, 578 F.2d 204, 207–208 (8th Cir. 1977), aff'd on rehearing en banc, 582 F.2d 1175 (1978), cert. denied, 443 U.S. 911, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979); United States v. Scott, supra, 545 F.2d at 40. Terry permits law enforcement officials, without a warrant, to conduct a limited investigation if, on the basis of specific and articulable facts, they acquire a reasonable suspicion that a crime is being committed. Terry v. Ohio, supra, 392 U.S. at 20–27, 88 S.Ct. at 1879–1883.

■ According to the affidavit for the truck warrant, the police had initiated surveillance on October 14, 1980, on the basis

---

**3.** In Skramstad, the informant's reliability was established by an allegation that the informant had a recent history of providing information which led to drug-related arrests. United States v. Skramstad, 649 F.2d 1259, 1262 (8th Cir. 1981). No such additional reference about the informant was made here.

**4.** Because we have invalidated the "630" warrant on Aguilar grounds, we need not reach the appellant's claims that the warrant's supporting affidavit contained material misrepresentations.

of the informant's tip, which said in substance: (1) the Schmidt brothers were marijuana dealers; (2) Jeffrey Schmidt was expecting to receive a large shipment of marijuana on or about October 14, 1980; and (3) the Schmidts packaged their marijuana in plastic garbage bags for further distribution by vehicle. A "reasonable suspicion" of unlawful activity could thus arise when the officers, in possession of this "tip," observed Jeffrey's furtive suspicious behavior while driving the truck,[5] see *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968); *United States v. Sanders, supra*, 631 F.2d at 1311–1312, and his subsequent loading of objects from his brother's garage into the rear of the truck. Regardless of the officer's subjective intent in initially stopping the vehicle, the objective circumstances involved here were entirely consistent with a warrantless investigatory stop. *See United States v. Vargas*, 633 F.2d 891, 896 (1st Cir. 1980).

■ Because the vehicle was legally stopped, the "plain view" of the six large plastic garbage bags through the windows of the truck's "topper" did not constitute a Fourth Amendment "search." The viewing officers were easily able to discover what was inside the vehicle while standing in a place where they had a right to be, *i.e.*, a public street. *See Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968).[6] The officers' observation of the garbage bags, coupled with the information received from the informant that this was how the Schmidts "market"

their marijuana,[7] provided the officers, who had witnessed Jeffrey's activities, with sufficient "probable cause" to search the truck.[8] The affidavit detailing this information was a sufficient basis for issuing the truck warrant.

■ We do not agree with the appellants that invalidation of the "630 warrant" necessitates suppression of the evidence seized from the pickup truck as prohibited "fruit of the poisonous tree." Our conclusion that the truck warrant was issued on sufficient probable cause does not depend on any information in the warrant pertaining to the illegal searches of Jeffrey's house and person; we have only examined "untainted" portions of the affidavit. *See United States v. Williams*, 633 F.2d 742, 744–745 (8th Cir. 1980); *United States v. Koonce*, 485 F.2d 374, 379 (8th Cir. 1973). Furthermore, we do not think that any items seized from Jeffrey's house or person, or any leads gained therefrom, tended significantly to direct the police towards the garbage bags of marijuana in the truck. *See United States v. Bacall*, 443 F.2d 1050, 1057 (9th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971). Nothing that was discovered in the illegal searches heightened or diminished the inference of probable cause raised when the officers observed plastic garbage bags in the rear of the truck. Thus, we find no "exploitation" of the prior illegality by the police. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

---

5. The truck warrant stated: "Schmidt was observed driving very slowly, driving down alleys, around blocks and continually looking out both side windows of the truck and the rear window."

6. Although citizens should be entitled to expect privacy within their vehicles without taking extraordinary measures to conceal their contents, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), normally one has a lesser expectation of privacy in a motor vehicle because it "travels public thoroughfares where its occupants and its contents are in plain view." *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974). *See United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

7. In contrast to the "630" warrant, the truck warrant affidavit sufficiently established the reliability of the informant. The "details" of the informant's tip were corroborated by the officers' observation of Jeffrey's activities and their "plain view" of the garbage bags in his truck.

8. For the same reasons, we find that probable cause to arrest Jeffrey existed independently of the defective warrant. Where probable cause for a warrantless arrest exists, the arrest is not invalidated because it was made pursuant to a warrant later found to be invalid. *United States v. Rose*, 541 F.2d 750, 756 (8th Cir. 1976).

## II. *Claims of Donald Schmidt.*

Donald Schmidt argues that the "421 warrant," pursuant to which his house and detached garage were searched, was not based on probable cause. We disagree and affirm Donald's conviction for possession with intent to distribute.

■ The "421 warrant" detailed the informant's tip regarding the Schmidts' dope dealings, the officers' observations of Jeffrey's activities in Donald's garage and while driving the truck, and the "plain view" of garbage bags in the back of the truck just after it had been loaded at Donald's garage. Furthermore, the affidavit stated that marijuana was found in the bags when the truck warrant was executed. This information supports the inference that the source of the marijuana in the truck was Donald Schmidt's garage, and that additional marijuana might be stored there. *See United States v. Sanders, supra,* 631 F.2d at 1311–1313; *United States v. Brown,* 584 F.2d 252, 256–257 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979).

■ Because there was sufficient probable cause to support the search of the appellant's garage pursuant to the "421" warrant, it is unnecessary for us to reach the question of the validity of the search of his house, as long as enough contraband was seized from the garage to support a conviction.[9] We conclude that where, as here, the circumstances evince a plan or intent to distribute, ten pounds of marijuana is an ample "distributable amount." *See United States v. Ramirez,* 608 F.2d 1261, 1263–1264 (9th Cir. 1979) (twenty doses, or five grams, of cocaine held to be a "distributable amount"); *United States v. Washington,* 586 F.2d 1147, 1153 (7th Cir. 1978); *United States v. James,* 494 F.2d 1007, 1030–1031 (D.C.Cir.1974), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). *See also* Sentencing Reform and Parole Release Guidelines, 28 C.F.R. § 2.20 (1980). In this case, the method of packaging for apparent distribution, the loading of the drugs into the truck and the informant's tip evinced such a plan or intent.

Affirmed in part, reversed in part.

ROSS, Circuit Judge, concurring and dissenting.

I concur in all of the opinion of Judge Heaney except I believe the "630" warrant was based on a legally sufficient affidavit; and I would uphold the "421" warrant as to both the house and the garage. In my opinion this case imposes an unreasonable and unnecessary burden on law enforcement officials seeking a search warrant.

---

9. Nonetheless, we question the district court's finding that probable cause existed as to the appellant's house. Few underlying circumstances were alleged which could have provided the magistrate with a basis for concluding that contraband was probably located in the house. The officers merely observed Jeffrey Schmidt going in and out of the house that afternoon; no one was seen carrying anything into or out of the house. *See United States v. Taylor,* 599 F.2d 832, 836–837 (8th Cir. 1979).