(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

At least two district courts have read rule 920 as continuing to limit the contempt powers of bankruptcy courts even after the enactment of section 1481. *Horace v. Moore*, 24 B.R. 892 (D.C.N.D.Ill.1982); *Martin-Trigona v. Shiff*, 19 B.R. 1001, (D.C.Conn.1982). Several bankruptcy courts, on the other hand, have held that rule 920 is no longer applicable. *See, e.g., In re Stacy*, 21 B.R. 49, 52 (Bkrtcy.W.D. Va.1982); *In re Gorin*, 18 B.R. 151, 153 (Bkrtcy.D.Conn.1982); *In re Lowe*, 18 B.R. 20, 24 (Bkrtcy.N.D.Ga.1981); *In re Eisenberg*, 7 B.R. 683, 690–91 (Bkrtcy.E.D.N.Y. 1980). *But see In re Pal Transport, Inc.*, 13 B.R. 935, 940 (Bkrtcy.M.D.Fla.1981) ("Since the Code is silent on this subject, there is no question that Bankruptcy Rule 920 still applies and still carries forward the limitations placed on the bankruptcy judge's power to punish for contempt.").

▪ We agree with the majority of bankruptcy courts that rule 920 is no longer a limit to contempt power in view of section 1481.[8] Rule 920 was prescribed pursuant to 28 U.S.C. § 2075. Both the rule and the statute were enacted before 28 U.S.C. § 1481. If section 1481 is inconsistent with rule 920, section 1481 controls since it was enacted later in time. Moreover, section 405(d) of the Bankruptcy Reform Act also provides that section 1481 applies to the extent rule 920 is inconsistent.[9]

The power of contempt is not unlimited, however, even if the contempt exercised is within the statutory grant. It has a due process limitation "declared to be 'the least possible power adequate to the end proposed.'" *Marshall v. Gordon*, 243 U.S. 521, 541, 37 S.Ct. 448, 453, 61 L.Ed. 881 (1917) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 93, 105, 5 L.Ed. 242 (1821)). The review by the district court therefore should have been limited to whether the contempt order was "the least possible power adequate to the end proposed," and whether the findings by the bankruptcy court were clearly erroneous. The district court here made a de novo review. On the strength of the prospective application of *Northern Pipeline*, we find this to be error. We thus vacate the district court decision and remand for a proper review consistent with this opinion.

Each party shall pay its own costs.

UNITED STATES of America, Appellee,

v.

Steven Thomas RODGERS, Appellant.

No. 83–1837.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1983.

Decided April 16, 1984.

Rehearing Denied May 24, 1984.

---

Marc G. Kurzman, Scott G. Harris, Kurzman, Shapiro, Manahan & Partridge, Minneapolis, Minn., for appellant.

James M. Rosenbaum, U.S. Atty., Thomas B. Heffelfinger, Asst. U.S. Atty., D.Minn., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BRIGHT, Circuit Judge, and HANSON, Senior District Judge.*

LAY, Chief Judge.

Steven Thomas Rodgers was convicted after a jury trial on a two-count indictment. Count I alleged unlawful distribution on February 17, 1981, of cocaine in violation of

---

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

21 U.S.C. § 841(a)(1); Count II alleged unlawful possession with intent to distribute, on October 6, 1982, of cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, Rodgers challenges this conviction on three grounds. First, Rodgers argues that he was entitled to an evidentiary hearing based upon an alleged material misrepresentation in the application supporting the search warrant. Second, Rodgers argues that Counts I and II of the indictment were improperly joined. Third, Rodgers urges that there was no cause to support a search of his residence. We affirm the judgment of conviction.

*Facts*

The evidence concerning Count I shows that on February 17, 1981, undercover narcotics agent Joel Kohout and an informant, Rod Lusti, went to Rodgers' residence to purchase one-half ounce of cocaine. Lusti and his car were searched prior to his entering Rodgers' residence. Kohout gave Lusti $1,400 with which to purchase the cocaine. Lusti purchased cocaine that was later determined to be approximately one-half ounce of 30% pure cocaine.

On March 5, 1981, Kohout telephoned Rodgers at his residence and arranged to meet with him on March 6 to buy cocaine. On March 6, 1981, Kohout and another undercover agent met at Rodgers' residence. Rodgers asked Kohout if she had sold all the cocaine she had previously gotten from him. Rodgers also stated that a great deal of money could be made selling cocaine and that he never kept any in the house, although he had a sample at that time. Rodgers agreed to go get the cocaine from his source and told the agents to meet him back at his house later. When the agents returned to Rodgers' home, he stated that he had not obtained the drug because he thought he had been followed.

On March 25, 1981, undercover narcotics agent Michael Campion visited Rodgers at his residence. Rodgers stated that he thought he was being watched by the police. He further stated that a couple of weeks earlier Lusti had come to his house with a girl and that he had sold the girl one-half ounce of cocaine. Rodgers added that approximately one week later the girl had returned to his house with another girl and tried to purchase more cocaine. Rodgers told Campion he was convinced one of these girls was a narcotics agent and that he was being very cautious. Rodgers further stated that he had cocaine available but that he did not keep it in the house. Campion decided to postpone his investigation of Rodgers at that time because of Rodgers' concern with police surveillance.

The evidence concerning Count II shows that on October 6, 1982, Deputy Sheriff Thomas Rainville and other narcotics agents executed a search warrant at Rodgers' residence. When the agents entered Rodgers' residence pursuant to the search warrant, they found Rodgers in the basement with several other people. On a bar in the basement agents recovered a razor blade, a straw, and a glass picture frame, all coated with white powder. Agents also recovered a paper bindle containing white powder from the area next to the bar. This powder was all subsequently identified as cocaine. After Rodgers and the others present were placed under arrest, Rodgers asked Rainville if the other people could be released because they had nothing to do with the reason the agents were there.

Rainville searched Rodgers and recovered $436 in cash and a bindle containing pills. These pills were identical to Valium tablets found in four pharmaceutical bottles of Valium in the garage of the residence. In Rodgers' bedroom, the agents recovered numerous documents in his name, a very sensitive scale, and a spoon containing traces of cocaine.

Deputy Daniel Dunlevy searched the area outside Rodgers' residence and found a pickle jar containing three bags of white powder. The powder was subsequently identified as approximately 69 grams of cocaine with an average purity of 60%. Two fingerprints of Rodgers' were recovered from the pickle jar. The 69 grams of cocaine had a street value of approximately $17,500.

On January 4, 1983, Rodgers filed numerous pretrial motions, including motions to sever the two counts of the indictment and to suppress the fruits of the execution of a search warrant. On January 14, 1983, the district court[1] issued an order denying the motion for severance and referring the question of suppression of the search warrant to Magistrate Short for a hearing. After a hearing, the magistrate recommended denial of Rodgers' motion to suppress the results of the search warrant and did not conduct an evidentiary hearing. The district court affirmed the recommendations of the magistrate. The jury thereafter returned guilty verdicts as to both counts.

*Discussion*

### A. Evidentiary Hearing

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court set forth the rule to be followed for ordering an evidentiary hearing concerning the veracity of affidavits supporting search warrants. The Court there held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56, 98 S.Ct. at 2676.

■ In this case Rodgers did not make the requisite preliminary showing. He made no specific allegations, supported by offers of proof, that Deputy Rainville, the affiant, had deliberately or recklessly misstated the truth in the affidavit of the search warrant. Although Rodgers called one witness who Rodgers assumed was the informant, the alleged informant invoked her Fifth Amendment right to remain silent. Rodgers had hoped the alleged informant would testify that she was, in fact, the informant and that she never told Deputy Rainville she had purchased cocaine from Rodgers. However, this testimony was never elicited. Moreover, the magistrate concluded that even assuming the alleged informant did testify favorably to Rodgers, there were serious questions as to her credibility and the magistrate would give more credit to Deputy Rainville. The magistrate therefore determined that the allegations of Rodgers were not sufficient to warrant a *Franks* hearing, and so recommended to the district court. This recommendation was followed by the district court. We find no error.

### B. Joinder of Offenses

■ Rodgers' second argument is that the two counts of the indictment were improperly joined, or that, assuming proper joinder, he suffered prejudice from the refusal of the district court to sever the counts. Whether two or more offenses can be joined in a single indictment is governed by Fed.R.Crim.P. 8(a).[2] Relief from proper, but nevertheless prejudicial, joinder is governed by Fed.R.Crim.P. 14.[3] Although the two rules are related, our standard of review differs for rule 8(a) misjoinder and rule 14 prejudicial joinder. The former is a question of law and if the joinder is not permitted by rule 8(a), a conviction must be reversed. *United States v. Long*, 674 F.2d

---

1. The Honorable Edward J. Devitt, United States Senior District Judge for the District of Minnesota.

2. Rule 8(a) provides:
 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

3. Rule 14 provides in part:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

848, 854 (11th Cir.1982); *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980);[4] *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir.1975). Rule 14 relief, on the other hand, lies within the discretion of the trial judge and refusal to sever counts or defendants properly joined under rule 8 will be reversed only if the discretion was abused. *United States v. Hastings*, 577 F.2d 38, 40 (8th Cir.1978); *United States v. Riley*, 530 F.2d 767, 770 (8th Cir.1976).

## 1. Rule 8(a) Misjoinder

 The joinder of offenses pursuant to rule 8(a) is allowed in three situations: (1) when the offenses are of the same or similar character; (2) when the offenses are based on the same act or transaction; or (3) when the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. The offenses joined in this case were Rodgers' unlawful distribution of cocaine from his residence on February 17, 1981, and Rodgers' unlawful possession of cocaine with intent to distribute from the same residence on October 6, 1982. We find that these offenses were properly joined as being of the same or similar character.

In applying the "same or similar character" standard, this court has allowed the offenses to be joined when "the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *United States v. Shearer*, 606 F.2d 819, 820 (8th Cir.1979); *see also United States v. McClintic*, 570 F.2d 685, 689 (8th Cir.1978); *United States v. Riley*, 530 F.2d 767, 770 (8th Cir.1976). In applying this standard, however, rule 14 must be kept in mind. The availability of rule 14 as a rem-

edy for prejudice that may develop during the trial permits rule 8 to be broadly construed in favor of initial joinder. *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir.1971); *Haggard v. United States*, 369 F.2d 968, 973 (8th Cir.1966), *cert. denied*, 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967).

At first blush, the 20 month time period between the offenses would seem to violate the "relatively short period of time" factor that we have previously espoused. However, in a similar case involving narcotics violations, we affirmed the joinder of offenses when they were eight months apart. *United States v. Sanders*, 463 F.2d 1086 (8th Cir.1972). Other cases with significant time periods between offenses but that nevertheless affirmed joinder include *United States v. Hastings*, 577 F.2d 38 (8th Cir.1978) (counterfeiting offenses covering a two-year period properly joined); *Johnson v. United States*, 356 F.2d 680 (8th Cir.) (Mann Act offenses covering a five-month period properly joined), *cert. denied*, 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966). These cases do not mean that the time-period factor is for naught. Rather, the time-period factor is to be determined on a case-by-case approach; there is no per se rule on when the time period between similar offenses is so great that they may not be joined. Indeed, that is why we have referred to a *"relatively* short period of time" between the two offenses. The time period is relative to the similarity of the offenses, and the possible overlapping of evidence.

In this case, then, we find that the offenses are of the same type, that the evidence as to each count will overlap somewhat, and that, relative to these factors, the time period between the offenses was

---

**4.** *Werner* actually states that "if the joinder was not permitted by Rule 8, a conviction must be reversed *unless the error was harmless."* 620 F.2d at 926 (emphasis added). Our circuit, however, has rejected the harmless error standard at least with respect to rule 8(b) misjoinder of defendants. *United States v. Bledsoe*, 674 F.2d 647, 654 (8th Cir.1982) ("Under Fed.R.Crim.P. 8(b), the district court has no discretion to deny severance of misjoined defendants; we have held misjoinder of defendants is inherently prejudicial."); *see also Haggard v. United States*, 369 F.2d 968, 973 (8th Cir.1966), *cert. denied*, 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967). Because we find joinder was proper under rule 8(a), we need not discuss whether the harmless error standard is applicable under an 8(a) misjoinder.

sufficiently short. We find that the evidence will—or, more appropriately, did—overlap because evidence surrounding the first offense could have been introduced in a trial for the second offense to show intent and identity. The charge in Count II of possession with intent to distribute cocaine was based on the recovery of approximately 69 grams of cocaine on Rodgers' property on October 6, 1982. The cocaine was found inside a bottle that was hidden in a woodpile behind Rodgers' home. The bottle had Rodgers' fingerprints on it. The government was required to prove identity—that Rodgers possessed the drugs—and intent to distribute.

The fact of Rodgers' involvement in an alleged prior drug sale, and his earlier statements regarding the manner of his operation, were probative of his intent and possession on October 6, 1982. During the course of the undercover investigation in the weeks surrounding the February 17, 1981, sale, Rodgers made numerous comments to several undercover agents concerning the manner in which he operated his drug business. Specifically, Rodgers stated that he never kept his drugs in the house. The prior sale is also relevant to rebut Rodgers' contention, made in hearings before Magistrate Short, that he did not know what cocaine was, and to show that he intended to distribute the cocaine found on October 6. We have previously recognized that in a prosecution for a violation of narcotics laws, the defendant's complicity in other similar narcotics transactions may serve to establish intent or motive to commit the crime charged. *United States v. Lewis*, 423 F.2d 457, 459 (8th Cir.1970). To be sure, evidence of the alleged prior sale cannot be used to prove that Rodgers is a bad person, or that he acted in conformity with alleged prior bad acts. However, Federal Rule of Evidence 404(b) clearly states that prior crimes, wrongs, or acts may be admissible to prove intent and identity, as well as motive, opportunity, preparation, plan, knowledge, or absence of mistake or accident.

We therefore find that the two counts were properly joined pursuant to Fed.R. Crim.P. 8(a).

2. Rule 14 Severance

Because we have concluded that the offenses were properly joined, we must next determine whether the offenses nevertheless should have been severed pursuant to rule 14. The case law is clear that, absent prejudice establishing an abuse of discretion by the trial court, denial of a defendant's motion for severance will not warrant reversal. *United States v. Schearer*, 606 F.2d 819, 820 (8th Cir.1979); *United States v. Riley*, 530 F.2d 767, 770 (8th Cir.1976). We have further stated: "Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together." *United States v. Dennis*, 625 F.2d 782, 802 (8th Cir.1980).

We concluded above that the government would be allowed to admit evidence concerning the first offense in a trial for the second offense. Therefore, Rodgers was not prejudiced and the district court did not abuse its discretion in refusing to sever the two offenses.

C. The Search Warrant Affidavit

Rodgers' final challenge on appeal is that the affidavit in support of the search warrant was insufficient on its face to establish probable cause to believe there would be controlled substances found at Rodgers' residence. The affidavit, prepared by Deputy Sheriff Rainville, provided Chief Judge Kalina, Hennepin County District Court, with the following information: During the previous 72 hours an informant had given the affiant information on at least two known drug dealers, including Rodgers; during the previous 72 hours the informant had been inside Rodgers' residence and had observed a large quantity of cocaine under Rodgers' control; informant thereafter made a controlled buy from Rodgers at his residence that was indirectly observed by

affiant and other officers who searched the informant before the buy, escorted the informant to Rodgers' residence, and received what was determined to be cocaine directly from the informant immediately after leaving Rodgers' residence; informant told the affiant that the cocaine had been obtained directly from Rodgers in his bedroom; during the previous year and a half the narcotics unit of the Hennepin County Sheriff's Office and other narcotics agencies had received information that Rodgers was selling large quantities of cocaine; during the previous year and a half a narcotics agent with the Minnesota Bureau of Criminal Apprehension had purchased cocaine from Rodgers.

Rodgers relies on *United States v. Schmidt*, 662 F.2d 498 (8th Cir.1981), to attack this affidavit. *Schmidt* involved a similar search warrant application that was determined to be insufficient to establish probable cause. We there concluded: "Considering the negligible 'track record' of the informant in tandem with the pausity of 'detail corroboration' here, we find that the ... warrant falls short of what is required by *Spinelli* and *Aguilar*." *Id.* at 503. Rodgers' reliance on *Schmidt* fails for two reasons. First, the *Schmidt* affidavit noted that the informant made a controlled buy, but it did not state what type of control was used. In this case, on the other hand, the circumstances surrounding the controlled buy were given, and these tended to substantiate the fact that Rodgers was selling cocaine from his residence. The informant was searched immediately before entering and after leaving Rodgers' residence, and the informant stated that the cocaine had been purchased from Rodgers.

The second reason that Rodgers' reliance on *Schmidt* fails is that this case is now governed by *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, the Supreme Court abandoned the rigid two-pronged test under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining whether an informant's tip established probable cause for issuance of a search warrant. The Court adopted a totality of the circumstances approach in which

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates*, 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Using this approach, we find that the information set forth in the affidavit was sufficient to support a finding of probable cause.

For the foregoing reasons, the judgment of the district court is affirmed.