**UNITED STATES of America, Plaintiff,**

v.

**Rosario RUELAS–ARMENTA,
Defendant.**

**No. CR87–1027–PAR.**

United States District Court,
C.D. California.

May 3, 1988.

Thomas H. Bienert, Jr., Asst. U.S. Atty., Los Angeles, Cal., for plaintiff.

Joseph F. Walsh, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

RYMER, District Judge.

The Grand Jury charged three defendants on December 23, 1987 with eight counts alleging the violation of four federal statutes. They are: 1) conspiracy, 18 U.S.C. § 371; 2) possession of stolen mail, 18 U.S.C. § 1708; 3) possession of stolen United States Treasury Check, 18 U.S.C. § 510(b); and 4) possession of a false identification document. Defendant Ruelas–Armenta was charged with three felony offenses; he pled guilty to count four of the indictment pursuant to a plea bargain agreement in which counts one and five would be dismissed. Count four charged defendant with the unlawful possession of the contents of one letter stolen from the mails. 18 U.S.C. § 1708. This letter contained a check to Eleanor Rolko for $468.00. Count one alleged the crime of conspiracy to pass forged treasury checks in violation of 18 U.S.C. § 371; Count five charged the crime of receiving and concealing one stolen Treasury check in the amount of $468.00 in violation of 18 U.S.C. § 510(b). The indictment alleges that a total of over $7,000 was stolen by all the defendants. The factual basis for the plea was that at the time of his arrest on December 8, 1987, Ruelas–Armenta knowingly processed one check in the amount of $468.00 which had been stolen from the mail.

The court's determination of defendant's sentence is governed by the new sentencing guidelines enacted pursuant to 28 U.S.C. § 994(a).[1] Under the guidelines, the base offense level for defendant's crime is a four. Guideline § 2B1.1, "Larceny Embezzlement, and other Forms of Theft." The Presentence Report added six levels because of the specific offense characteristics present in this case, four levels because the amount of the loss is between $5,001 and $10,000 and two levels because more than minimal planning was involved. The adjusted offense level therefore is ten. The sentence guideline for level ten is six to twelve months.

Defendant contends that the Presentence Report disregarded the plea agreement and level of the offense in two respects: first by including conduct other than that charged in the count of conviction and second, by determining that more than minimal planning was involved. In defendant's view, only one level should be added for specific offense characteristics; the resulting guideline range for level five should thus be zero to five months. Furthermore, defendant denies that he has a prior conviction for forgery and that he is the brother of the co-defendant.

*Findings of Fact*

1. Defendant was arrested on December 8, 1987 when Los Angeles Police Officers stopped the car in which he was riding for a routine traffic violation. After obtaining defendant's consent, the officers searched the car and discovered a black handbag that contained thirteen U.S. Treasury checks totaling $7,301 and various identification documents. The names of the payees on the checks appeared at least once as a name on the identification documents.

---

1. While both parties proceed on the assumption that the applicable Guidelines are those currently in effect (January 15, 1988 Amendments), the court notes that the offense was committed on December 8, 1987, prior to the effective date of the amendments. However none of the amendments worked a substantive change that is relevant to the issue before the court. Section 1B1.3 of the October, 1987 Guidelines (Relevant Conduct) is identical to the current § 1B1.3(a)(2) in permitting consideration of acts that are "part of the same course of conduct, or a common scheme or plan, as the offense of conviction." As the January 1988 Commentary to amended § 1B1.3 states, ' This guideline and § 1B1.4 clarify the intent underlying § 1B1.3 as originally promulgated." Further, the October 1987 Commentary does not suggest that the guidelines in force at the time of the offense should be interpreted any differently from the amended guidelines. Like the current Commentary to § 1B1.3, the October 1987 Commentary contemplated consideration of relevant offender characteristics as authorized by Chapter Three (Adjustments); § 3D1.2(d) remains unchanged. Finally, the October 1987 Commentary expressly directs that "the governing standard should be liberally construed in favor of considering information generally appropriate to sentencing." October 1987 Guidelines at 1.17.

2. Defendant's photograph appeared on two of the identification cards. His fingerprints were on two of the checks.

3. The checks were stolen and the identification documents were false.

4. In an interview subsequent to the arrest, co-defendant Jose Lopez–Armenta stated to the case agent that he and defendant were brothers.

5. During the interview with the Probation Officer, the defendant denied that he had any relatives in this country. The court has not received, as yet, the information needed to resolve this conflict. The Probation Office did not rely on defendant's denial in calculating the suggested sentence, nor shall I. § 3C1.1, Commentary (e). However, whether there was a relationship may bear to a limited extent on whether there was more than minimal planning.

6. Defendant was convicted of misdemeanor forgery under the name of George Miranda in Capitola, California and was sentenced to 24 months summary probation on July 8, 1987. Defendant now denies that he has ever been convicted of a crime in either the United States or Mexico. (The Probation Office did not count the denial as a material falsehood.) The following evidence supports the Probation Office's Report and finding that defendant's criminal history places him in Category I:

a) photographs and fingerprints of "George Miranda" sent from the Capitola Police Department match those of defendant;

b) defendant initially volunteered the information about this earlier arrest to the arresting agents.

7. The Assistant United States Attorney states that his office has photographs of defendant cashing checks while using false I.D. not associated with this case. These photographs were not turned over to defendant prior to sentencing.

*Specific Offense Guideline Range*

In adding the six levels to the base number, the Presentence Report considered information outside that alleged in the charge (count four) to which defendant pled guilty. Although count four was for the possession of a single stolen check in the amount of $468.00, the Report took into account the entire amount ($7,031) involved in the 13 checks charged in the Indictment. The adjustment so determined adds four levels to the base offense level. Guideline § 2B1.1. The Report also took into account that defendants had false identification in their possession to further the scheme, concluding that this constituted "more than minimal planning" adding two levels. Guideline § 2B1.2(b)(3)(B). Photographs of defendant negotiating other checks with false I.D. supports the probation officer's assessment.

Defendant argues that the court cannot consider facts outside those inherent in the count of conviction or those stipulated to at the time of the plea in determining the guideline range. To do otherwise would ignore that defendant and the government entered into a plea bargain in which the other two counts would be dismissed. The effect, according to defendant, would be to render plea bargains a nullity and thus wreak havoc with important policies behind the guidelines.

The language of the Guidelines Manual does not support defendant's position. The basic instructions for determining the applicable guideline are in Guideline § 1B1.2. The first step is to "apply the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction." § 1B1.2(a). Both parties agree that § 2B1.1 is the most applicable section. The second step is to determine the appropriate guideline range in accordance with § 1B1.3 (Relevant Conduct). The Probation Office considered the additional information under § 1B1.3(a)(1). This sub-section allows the court to consider all acts and omissions that occurred during the offense of conviction. The government contends that the information about the $7,000 and the planning is covered by this provision because the other stolen checks and false identification were found in the car with the defendants when they were arrested. Government's Response at 4. It is unnecessary, however, to resolve

whether non-charged acts may be considered under § 1B1.3(a)(1) because in this case they are relevant under § 1B1.3(a)(2).[2]

■ Subsection 1B1.3(a)(2) states that determination of the guideline range solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, shall be based on "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Crimes, such as defendant's, that fall under § 3D1.2(d) are therefore governed by § 1B1.3(a)(2). The commentary to this sub-section notes that, " 'Such acts and omissions,' as used in subsection (a)(2), refers to acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable. This subsection applies to offenses of types for which convictions on multiple counts would be grouped together pursuant to § 3D1.2(d); *multiple convictions are not required.*" Guidelines at 1.18 (January 15, 1988) (emphasis added).[3] Based on the evidence before the court, defendant aided and abetted the scheme to negotiate the other checks such as to warrant consideration of the entire course of conduct under subsection (a)(2). Defendant argues that the plea bargain should nullify the relevance of the conduct relating to the other offenses. The commentary does not support this position. It states:

> However, the applicability of subsection (a)(2) does not depend on whether multiple counts are alleged. Thus, in an embezzlement case, for example, embezzled funds that may not be specified in any count of conviction are nonetheless included in determining the offense level if

they are part of the same course of conduct or part of the same scheme or plan as the count of conviction. Similarly, in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

Guidelines at 1.19 (January 15, 1988). So while the conduct regarding the other checks is not contained in the count of conviction, that absence is not a bar to its consideration under subsection (a)(2).

■ This view does not, as defendant contends, violate important policies behind the guidelines. The guidelines are not intended to effect significant changes in plea bargain practice. Guideline § 1A4.(c). Defendant argues that allowing the court to consider the additional information does effect a significant change by rendering "the whole purpose of plea bargaining null and void." Defendant's Position Paper at 8.

However, while permitting the consideration of additional information might decrease the incentive to plea bargain in certain cases, it should not in most cases destroy all incentives. First, the court can always decrease the provisional offense level two levels if the defendant demonstrates acceptance of responsibility for his actions. Guideline § 3E1.1. Although a guilty plea is neither necessary nor sufficient to obtain this reduction, as a practical matter it will often help. Second, within each offense level the guidelines still permit the court a considerable range of discretion. For example, in this case the guideline range for level ten is six to

2. The court does note that the commentary to the guidelines employs the following example to illustrate the difference between information that affects the selection of the offense level and that which can influence the court once the level is determined: "For example, if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was *not taken into account by the guidelines* would provide a reason for sentencing at the top of the guideline range." Guidelines at 1.20 (January 15, 1988) (emphasis

added). However, robbery is, unlike the instant charge, covered by § 1B1.3(a)(1).

3. The commentary to the section on the "Significance of Commentary" states that courts will (i.e. should) treat "the commentary much like legislative history or other legal material that helps determine the intent of the drafter." Guidelines at 1.22 (January 15, 1988). Changes or additions in the commentary since its submission to Congress are not intended to effect substantive changes in the application of the guidelines. Guidelines "Letter of Transmittal."

twelve months. In percentage terms this range is large and allows the court to consider leniency if it is indicated. Moreover, between offense levels there is often considerable overlap. For example in this case, plaintiff's construction would result in a guideline range of 0–5 months (for level 5 apart from any adjustment for planning), whereas to consider relevant conduct in addition to the count of conviction results in a range of 2–8 months (for level 8 apart from any adjustment for planning). Thus there is a four month overlap. (Similarly, if a planning adjustment is made, the ranges for level 8 compared with level 10 would have a two month overlap from 1–7 to 6–12.) Third, the amount of any fines imposed on the defendant could be influenced by a guilty plea and the subsequent dismissal of additional charges. Fourth, the statutory maximum is often decreased by the dismissal of other charges. Moreover, the destruction of any incentive to plea bargain in certain cases does not appear sufficiently to defeat the goals of the guidelines so as to impel this court to ignore the reasonably clear language of the guidelines and their accompanying commentary. Accordingly, the court finds that § 1B1.3(a)(2) permits this court and the probation office to consider both defendant's involvement in a scheme to steal over $7,000 and the more than minimal planning that the scheme entailed.

*Minimal Planning*

 The Presentence Report added two levels because the offense involved "more than minimal planning." § 2B1.2(b)(3)(B). Under the guidelines this phrase means:

> more planning than is typical for commission of the offense in a simple form. 'More than minimal planning' also exists

if significant affirmative steps were taken to conceal the offense.

> 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. *Consequently, this adjustment will apply especially frequently in property offenses.* § 1B1.1, Commentary (f) (emphasis added).

The Commentary to § 2B1.1 further states, "The guidelines provide an enhancement for more than minimal planning, which includes most offense behavior involving affirmative acts on multiple occasions. Planning and repeated acts are indicative of an intention and potential to do considerable harm. Also, planning is often related to increased difficulties of detection and proof." Guidelines at 2.16 (emphasis added). The presence of other checks and false identifications support the addition of the two levels under 2B1.2(b)(3)(B).[4]

*Withdrawal of Plea*

 Defendant believes that the acceptance by the court of an offense level of ten should allow him to withdraw his guilty plea. He cites § 6B1.3 in support of this view.[5] This section allows the withdrawal of a guilty plea whenever the court rejects the agreement pursuant to Fed.R.Crim.P. 11(e)(1)(A). This section is not applicable in the present case because the court did not and does not reject the agreement: counts one and five of the indictment will be dismissed at the time of sentencing. Even an unexpectedly long sentence does not provide grounds for a change of plea.

---

4. Defendant objects to the consideration of the photographs of defendant negotiating checks because the photographs were not revealed to defendant and his counsel prior to the plea bargain. The court does not reach this contention because the existence of additional false identification found at the time of the arrest is sufficient to support the imposition of two levels for more than minimal planning.

5. In this connection it should be noted that § 6B1.4 provides for a plea agreement to be accompanied by a written stipulation of facts relevant to sentencing, which can include the relevant facts and circumstances of the actual offense conduct and offender characteristics. None was proferred in this case. In any event the court is not bound by such a stipulation, but may determine the facts relevant to sentencing with the aid of the presentence report. § 6B1.4(d).