UNITED STATES of America, Plaintiff,

v.

**Ira SILVERMAN, Defendant.**

**No. CR2-88-028.**

United States District Court,
S.D. Ohio, E.D.

Aug. 23, 1988.

D. Michael Crites, U.S. Atty., and John Broad, Asst. U.S. Atty. Columbus, Ohio, for plaintiff.

David Bodiker of Bodiker and Holland, Columbus, Ohio, for defendant.

MEMORANDUM OPINION

GRAHAM, District Judge.

Defendant, Ira Silverman, was indicted on March 17, 1988 by a grand jury in the Southern District of Ohio for one count of possession with intent to distribute cocaine, a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count charging travel in interstate commerce to promote a narcotics business enterprise in violation of 18

U.S.C. § 1952. On April 25, 1988, defendant withdrew his previously entered plea of not guilty to count one of the indictment, and pursuant to a plea agreement with the government, entered a plea of guilty to that count. The government has agreed to request a dismissal of count two of the indictment at the time of sentencing. The offense alleged in count one of the indictment occurred on February 15, 1988. Therefore, this case is governed by the Sentencing Commission Guidelines which went into effect on November 1, 1987.

A presentence investigation report prepared by this Court's probation department has been submitted to the Court, along with defendant's objections to the report. On August 9, 1988, defendant filed a motion requesting that certain procedures be followed in regard to the Court's consideration of the report and the sentencing hearing. The suggested procedures include the following: 1) that the Court in determining the offense level should consider only evidence which would be admissible at trial; 2) that the Court should require proof by clear and convincing evidence of the factors which determine the offense level; 3) that the court should limit evidence at the hearing to matters which have previously been set forth in the presentence report and which are relevant to a determination of the offense level, not merely previous bad conduct; 4) that defendant be permitted to present evidence and to testify personally without waiving his fifth amendment privilege as to matters outside the legitimate scope of the Court's inquiry; and 5) in the alternative, that defendant be permitted to withdraw his guilty plea pursuant to Fed.R.Civ.P. 32(d).

■ Defendant's argument that the rules of evidence governing trials should apply to sentencing proceedings is not supported by statutory or case authority. The Federal Rules of Evidence do not apply to sentencing proceedings. Fed.R.Evid. 1101(d)(3). Title 18, § 3661 of the United States Code provides:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

■ The United States Supreme Court has held that the requirements of due process in relation to evidence received during a sentencing proceeding do not correspond to the requirements of due process at the trial stage. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). A sentencing court may consider uncorroborated hearsay evidence so long as defendant is afforded an opportunity to explain or rebut the evidence. *United States v. York*, 830 F.2d 885 (8th Cir.1987). A sentencing court has also been allowed to take into account the "highly relevant" information that a defendant has been involved in prior criminal activities, even though he has never been prosecuted or convicted for those activities. *United States v. Hill*, 688 F.2d 18, 20 (6th Cir. 1982).

This approach to sentencing has not been repealed under the sentencing guidelines. Indeed, the October, 1987 commentary to § 1B1.3 of the guidelines, which defines relevant conduct for the purpose of determining the offense level, cites with approval the holding of the court in *United States v. Marshall*, 519 F.Supp. 751, 754 (D.Wis. 1981), *aff'd*, 719 F.2d 887 (7th Cir.1983) that "so long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence." Guidelines Manual at 1.18 (October, 1987).

■ The sentencing judge is likewise not limited to consideration of information contained in the presentence report. *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Before making the sentencing determination, a judge may appropriately conduct an inquiry broad in scope and largely unlimited as to the kind of information he may consider or the source of the information. *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Thus, insofar as defendant seeks to limit

the information before the Court to evidence which would be admissible at trial and which is already contained in the presentence report, his motion is not well taken and it is DENIED.

■ The second branch of defendant's motion urges this Court to apply a standard of clear and convincing evidence to the factual matters in the report which he alleges are false or inaccurate. Most sentencing decisions do not address the question of what burden of proof should be applied in a sentencing hearing. As noted previously, the Court in *United States v. Marshall*, 519 F.Supp. at 754, held that so long as the information before the court has "sufficient indicia of reliability," it may be taken into account. The Sixth Circuit Court of Appeals in *United States v. Hill*, 688 F.2d at 20, stated that defendant had failed to show that information in the presentence report was "materially false" so as to justify vacating the sentence. However, the issue was expressly decided by the United States Court of Appeals for the Second Circuit in *United States v. Lee*, 818 F.2d 1052 (2d Cir.1987). In *Lee*, the court adopted a preponderance of the evidence standard for federal sentencing proceedings, relying on the decision of the United States Supreme Court in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), wherein a preponderance of the evidence standard provided for by a state statute governing sentencing for possession of a firearm during the commission of certain felonies was held to meet due process requirements. The Second Circuit in *Lee* and the Supreme Court in *McMillan* rejected the defendant's claim that due process would be satisfied only by, at minimum, proof by clear and convincing evidence. *United States v. Lee*, 818 F.2d at 1057; *McMillan v. Pennsylvania*, 477 U.S. at 91, 106 S.Ct. at 2419–20. In fact, the Supreme Court in *McMillan* went on to state, 477 U.S. at 91–92, 106 S.Ct. at 2420:

> Furthermore, petitioners do not and could not claim that a sentencing court may never rely on a particular fact in passing sentence without finding that fact by "clear and convincing evidence." Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all. See *Williams v. New York*, 337 U.S. 241 [69 S.Ct. 1079, 93 L.Ed. 1337] (1949). Pennsylvania has deemed a particular fact relevant and prescribed a particular burden of proof. We see nothing in Pennsylvania's scheme that would warrant constitutionalizing burdens of proof at sentencing. (Footnote omitted).

Thus, the Court finds that it would be improper to apply the clear and convincing evidence standard advanced by defendant. In light of the lack of an express statute or provision in Fed.R.Crim.P. 32 governing burden of proof and considering the comments of the Supreme Court in *McMillan*, it may be that no particular burden of proof need be established for sentencing proceedings. However, for purposes of this case, the Court will apply a preponderance of the evidence test to the factual matters set forth in the presentence report which are used to determine the offense level.

A sentencing hearing was held in this case on August 19, 1988. Defendant was given the opportunity to testify and to present evidence. Defendant expressed concern about waiving his fifth amendment rights and the Court indicated that defendant's objections to questions would be addressed as they arose. Defendant elected not to take the stand and presented no evidence. The Court finds that defendant has been afforded the opportunities requested in the fourth branch of his motion.

The second phrase of the third branch of defendant's motion raises the issue of to what extent a court may consider evidence of prior unindicted criminal activity on the part of the defendant in determining the appropriate offense level under the sentencing guidelines. The probation officer's report contains information of defendant's involvement in narcotics distribution activities which predate the offense of conviction. The probation officer has recommended that information concerning a kilogram of cocaine furnished to a police informant by defendant for distribution be con-

sidered as relevant conduct under § 1B1.3 of the guidelines for purposes of determining the base offense level.

Section 1B1.3 of the guidelines, effective November 1, 1987, provided in relevant part as follows:

To determine the seriousness of the offense conduct, all conduct, circumstances, and injuries relevant to the offense of conviction shall be taken into account. (a) Unless otherwise specified under the guidelines, conduct and circumstances relevant to the offense of conviction means:

acts or omissions committed or aided and abetted by the defendant, or by a person for whose conduct the defendant is legally accountable, that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction, ...

The commentary to this section states that the factors in § 1B1.3(a)(1) are derived from Fed.R.Civ.P. 8(a), governing joinder of similar or related offenses, and Fed.R. Evid. 404(b), which permits evidence of other crimes to establish motive, intent, plan and common scheme. Guidelines Manual at 1.17 (October, 1987). The commentary, *Id.*, goes on to state:

These rules provide standards that govern consideration at trial of crimes "of the same or similar character," and utilize concepts and terminology familiar to judges, prosecutors, and defenders. The governing standard should be liberally construed in favor of considering information generally appropriate to sentencing.

Section 1B1.3 was amended, effective January 15, 1988, prior to the date of the offense of conviction in this case. The amended version of § 1B1.3 provides in relevant part:

The conduct that is relevant to determine the applicable guideline range includes that set forth below: (a) *Chapters Two (Offense Conduct) and Three (Adjustments)*. Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

\* \* \* \* \* \*

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

The phrase "such acts and omissions" as used in subsection (a)(2) refers to acts and omissions committed or aided and abetted by defendant, or for which defendant would be otherwise accountable. Commentary, Guidelines Manual at 1.18 (January 15, 1988). The applicability of subsection (a)(2) does not depend on whether multiple counts are alleged; conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. *Id.* at 1.19; *United States v. Ruelas–Armenta*, 684 F.Supp. 1048 (C.D.Cal.1988). Thus, as the commentary, Guidelines Manual at 1.19 goes on to note:

... in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

Finally, § 3D1.2(d) provides for the grouping of counts where the offense level is determined largely on the basis of the quantity of the substance involved, and specifically includes offenses under § 2D1.1 (unlawful manufacturing, importing, exporting or trafficking in drugs, and possession with intent to commit these offenses) within the operation of § 3D1.2(d).

■ Defendant has pleaded guilty to one count of possession of approximately fifty-three grams of cocaine with the intent to distribute, an offense which occurred on February 15, 1988.

The presentence report reveals that an informant told the Drug Enforcement Authority case agent that defendant had provided him and a co-conspirator with a kilogram of cocaine to sell in August of 1987. Both offenses were of the same character, and under § 3D1.2(d), the quantities would be combined for purposes of determining the offense level even though the offenses occurred on separate days. See Guidelines Manual, Chapter Three, Supplementary Illustrations, Example D.4 (December, 1987).

The drug related activity related to the kilogram of cocaine constituted acts for which defendant would be accountable. It remains to be determined whether the alleged prior act and the offense of conviction were part of the same course of conduct or common scheme or plan for purposes of § 1B1.3(a)(2). Employing an analysis under Fed.R.Evid. 404(b), the case authorities support the conclusion that evidence of the August offense would be admissible in a trial of the February offense to show motive, intent, or continuing plan or course of dealing. See e.g., United States v. Harrison, 679 F.2d 942 (D.C.Cir. 1982); United States v. Passarella, 788 F.2d 377 (6th Cir.1986); United States v. McGuire, 808 F.2d 694 (8th Cir.1987); United States v. Costa, 691 F.2d 1358 (11th Cir.1982). The facts in the presentence report show a continuing course of narcotics dealing on the part of defendant. The informant obtained a kilogram of cocaine form defendant in the summer of 1987. The informant indicated that he and his co-conspirator had problems in distributing this cocaine and became in debt to defendant. On February 15, 1988, the informant arranged to purchase cocaine from the Mourning brothers. Upon his arrival at the residence, the informant was told that defendant had the cocaine, and that the transaction could not be completed until defendant arrived. When the informant returned to the residence and met with defendant, the defendant took the $260 tendered by the informant but refused to give him the one-fourth ounce of cocaine, stating that he was applying the money toward the informant's pre-existing debt. The prior transaction which resulted in a debt

owed to defendant thus became relevant to defendant's motive and intent in the February incident. Furthermore, defendant has admitted that he intended to go to Athens, Ohio on February 15, 1988 to sell the two ounces of cocaine found in his possession and that he had been involved in previous drug related activities in the past in Athens and Meigs Counties in Ohio. This admission refutes any contention by defendant that he had abandoned his course of narcotics dealings in Ohio.

The other test mentioned in connection with § 1B1.3, that of joinder of offenses under Fed.R.Crim.P. 8(a), is also satisfied in this case. See e.g. United States v. Rodgers, 732 F.2d 625 (8th Cir.1984) (offenses of unlawful distribution of cocaine and unlawful possession of cocaine with intent to distribute properly joined under Rule 8, since the offenses were of the same type, the evidence would overlap somewhat and the twenty-month period between offenses was sufficiently short.)

The Court finds that defendant's participation in the prior offense of distribution of a kilogram of cocaine, if factually accurate, constitutes a part of the same course of conduct or common scheme or plan as the offense of conviction, and is relevant conduct for the purpose of determining the offense level under § 1B1.3(a)(2). The Court would have been free prior to the guidelines to consider evidence of a continuing pattern of drug activity on the part of a defendant, and there is no indication that Congress or the Sentencing Commission intended to remove such matters from the consideration of the Court. It would be ironic indeed if the Court were required to ignore evidence that the defendant was a major drug supplier just because he happened to be in possession of only a relatively small amount of cocaine at the time of his arrest.

Finally, the Court must decide whether the alleged relevant conduct involving the kilogram of cocaine is supported by reliable evidence.

■ The presentence investigation report reveals that defendant was under in-

vestigation as a multi-kilogram cocaine distributor in the summer of 1987. On October 28, 1987, DEA agents in Columbus, Ohio were advised by a confidential informant that defendant was the head of a cocaine trafficking ring which distributed kilograms of cocaine in Columbus and Athens, Ohio. The informant further advised that in August of 1987, defendant supplied the informant and another co-conspirator with a kilogram of cocaine to sell. The informant and co-conspirator became indebted to defendant for this cocaine. Defendant was also implicated in cocaine distribution by a confidential informant reporting to the Athens Police Department and the Ohio Bureau of Criminal Investigation. The report goes on to state that on November 11, 1987, the DEA informant made a controlled purchase of cocaine form one of his co-conspirators. The cocaine was tested and found to be ninety-three percent pure. On February 14, 1988, the informant arranged to purchase a fourth of an ounce of cocaine from his co-conspirator. When he arrived on February 15, 1988, he was told that defendant had the cocaine, and that he would have to return later. When the informant met with defendant, defendant took the money from the informant and refused to give him any cocaine, saying that he was applying the money to a pre-existing debt. Defendant left the residence in a rented limousine and was stopped by narcotics officers. In defendant's gym bag was a bag containing 52.9 grams of cocaine which was ninety-three percent pure. Defendant admitted to the probation officer that he was going to Athens, Ohio that day to attempt to sell the cocaine, and that he had been involved previously in drug related activities in Athens and Meigs Counties. Defendant denied distributing multiple kilograms of cocaine to Central Ohio.

In addition, to the information provided in the presentence report, the court has before it the testimony of DEA Agent Richard K. Robins of the Columbus, Ohio office. Agent Robins testified that he was involved in the investigation of defendant. In October of 1987, he learned from a confidential informant that the informant had been obtaining cocaine from defendant during the summer of 1987 for the purpose of selling it. The informant reported that in July and August of 1987, defendant gave a kilogram of cocaine to the informant and a co-conspirator, identified as James Michael Mourning, for the purpose of selling it. They had a hard time selling that quantity of cocaine and collecting from their distributors, and ended up owing money to defendant. The informant's information was corroborated by Mike Mourning upon his arrest on February 15, 1988. Mike Mourning told Agent Robins that he had been selling cocaine for defendant for two to three years and that he had been involved in the distribution of the kilogram of cocaine. Mike Mourning also stated that he had gone to New York on two occasions and obtained a half pound of cocaine from defendant each time. He stated that defendant owned the safe which was kept at the Mourning address.

Agent Robins further testified that in November of 1987, the informant made a controlled purchase of cocaine from Mike Mourning. The agents were successful in making undercover purchases from other people identified by the informant. Agent Robins attempted to verify the information provided by the informant, and to the extent that he was able to check names and records, the information appeared to be accurate. He learned that defendant was under investigation by the Ohio Bureau of Criminal Investigation and the Athens, Ohio Police Department. Agent Robins also testified that the informant's information always proved to be accurate and led to several search warrants, arrests and indictments.

The Court finds that it has been demonstrated by a preponderance of the evidence that defendant supplied the informant and others with a kilogram of cocaine to sell in August of 1987. The informant's information was shown to be reliable and accurate. The informant's statements were corroborated through independent investigation and through the statements of his co-conspirator, Mike Mourning. The presentence report is replete with other information

which overwhelmingly indicates defendant's involvement as a distributor of cocaine, including defendant's own admissions. In his conversation with the probation officer, defendant denied providing the kilogram of cocaine, but he did not deny it at the sentencing hearing. His denial is uncorroborated, and in light of the other information in the report, not worthy of credence.

In light of the foregoing, the Court agrees with the recommendation of the probation officer that the prior distribution by defendant of a kilogram of cocaine be considered in establishing the offense level in this case, and that the appropriate base offense level is 26.

■ Defendant has moved in the alternative that he be allowed to withdraw his plea of guilty pursuant to Fed.R.Crim.P. 32(d). The fact that a defendant receives a higher sentence under the guidelines than he anticipated does not constitute grounds in this case for allowing defendant to withdraw his guilty plea. *United States v. Ruelas–Armenta*, 684 F.Supp. at 1052. Defendant's motion to withdraw his guilty plea is DENIED.

Defendant has objected to certain information contained in the presentence investigation report. Defendant first objects to paragraphs four through ten of the report. Defendant contends that those paragraphs contain hearsay information which is not verifiable, and which is irrelevant in that it concerns events too remote from the offense of conviction. The Court finds that the information in those paragraphs is not too remote in time from the offense of conviction and is relevant to sentencing as demonstrating the nature and extent of defendant's drug related activities. The Court further finds that the information is reliable. The Court notes that defendant does not contend that this information is false, but merely that it is not verifiable. However, the report reveals that the information received by various law enforcement agencies from different sources concerning defendant's drug activities has been consistent and corroborative. Defendant's objections to paragraphs four to ten are DENIED.

Defendant next objects to paragraphs eleven through fourteen of the report, which outline the circumstances behind the offense of conviction. The Court finds that the information in those paragraphs is true and accurate with the following exception. The Court finds that there was no indication that the scales, marijuana and handgun found at the Mourning residence belonged to defendant, and no showing that dynamite was found in the house, and therefore this information in paragraph fourteen will not be considered by the Court in sentencing. The Court does accept as accurate the information that defendant kept a safe at the residence. Mike Mourning did not know the combination to the safe. Further, Agent Robins testified that firecrackers were found in the safe, and the report reveals that defendant in October of 1987 was charged with unlawful dealing in fireworks, thus lending further support to Mike Mourning's statement that the safe belonged to the defendant.

■ Defendant disagrees with the opinion of the probation officer concerning the degree of defendant's culpability in the offense, as set forth in paragraphs fifteen, twenty-eight and twenty-nine. The probation officer recommends the addition of three points to the base offense level for defendant's involvement. Upon independent review of the facts, the Court agrees with the recommendation of the probation officer. The record reveals that defendant is a drug dealer of major proportions. On the day of the offense, defendant, although allegedly a person of few assets, hired a limousine to travel to Athens, Ohio. When the informant arrived to purchase cocaine, defendant took control of the situation and exercised dominion over the cocaine and the money. His own admission that he intended to go to Athens, Ohio that day to sell the cocaine belies any notion that he had given up dealing in narcotics. The Court finds that far from being a casual bystander with minimal involvement in the offense, defendant was a central, controlling and highly culpable actor in the instant

offense. The Court will add an additional three points based upon defendant's role in the offense.

Defendant objects to paragraph sixteen of the report. The Court rules that the information in paragraph sixteen will be disregarded for purposes of sentencing.

Defendant's objection to paragraph twenty-three has been resolved, and is now moot. The probation officer has agreed that defendant be awarded two negative points for acceptance of responsibility.

■ Defendant's final objection to the report concerns the information in paragraphs thirty-five and thirty-six regarding defendant's arrest in Athens County for carrying a concealed weapon, to which defendant pleaded no contest and was found guilty. The report relates that defendant was arrested by Ohio University security when a teacher observed him carrying a 9 millimeter pistol. Defendant also had a clip of ammunition and .30 caliber cartridges on his person. Within two hours of bond being set, some Ohio University students arrived and posted $10,000 cash for defendant's release. The Court finds that this information, when viewed in the context of the other information concerning defendant's extensive drug activities, is relevant to the determination of the sentence to be given within the guideline range since it further corroborates the fact that defendant was engaging in a continuous course of drug dealing. It is well known that drug dealers carry firearms to protect their drug supply and money, and it is significant that defendant's student acquaintances were willing and able to post a substantial amount of cash, even if it is assumed that $5000 was supplied by a friend of defendant's father, within such a short time. It is entirely reasonable to infer that the students who posted the bond were defendant's cohorts in drug dealing. Defendant's objection to these paragraphs is DENIED.

■ Except as indicated above, the Court finds the presentence report to be factually accurate and will consider the report in imposing sentence. The Court finds that the appropriate total offense level in this case is 27, which carries a sentencing range of seventy to eighty-seven months. It will be the judgment of the Court that the defendant be remanded to the custody of the Attorney General of the United States for a period of eighty-seven months. The Court has chosen the maximum term of incarceration within the guideline range because, from the facts before the Court, it is apparent that defendant has been a major dealer in cocaine in the State of Ohio.

The Court in addition imposes a period of supervised release of five (5) years. The Court finds that this period of supervised release is necessary in light of defendant's past record and drug activities to insure that defendant is adequately monitored following his release from incarceration.

The Court further imposes a fine of $2,500.00. The Court feels that a monetary penalty is appropriate in light of defendant's dealing in drugs for profit, and the amount of the fine is within the amount of defendant's assets revealed in the presentence report.

Defendant is further ORDERED to pay the $50.00 special assessment.

The motion of the government to dismiss Count Two of the indictment is GRANTED.