**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Donald R. TAPLETTE, Sr.,
Defendant–Appellant.**

**No. 88–3505
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 17, 1989.

Francis King, Federal Public Defender, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Gerry Deegan, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before KING, JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this case we are asked to consider whether Donald R. Taplette, Sr. was improperly sentenced under the new sentencing guidelines enacted pursuant to 28 U.S.C. § 994(a). Finding that the conduct charged in three counts of his indictment, later dismissed pursuant to a plea agreement, was properly considered in determining his sentence, we affirm.[1]

I

On February 5, 1988, a grand jury returned a four-count indictment against Taplette. Counts I, II and III charged him with knowingly, willfully and unlawfully distributing cocaine hypochloride, a Schedule II narcotic drug controlled substance in violation of Title 21 U.S.C. § 841(a)(1), on the dates of November 15, November 17, and December 1, 1987. Count IV charged him with knowingly, willfully and unlawfully distributing marijuana, a Schedule I controlled substance in violation of 21 U.S.C. § 841(a) on December 1, 1987.

Taplette entered into a plea agreement with the government under which he would plead guilty to Count IV, distribution of marijuana. In consideration for Taplette's willingness to acknowledge his guilt and accept responsibility for that conduct, the government agreed to move the court to dismiss Counts I, II and III at the time of sentencing. Taplette understood that the court was not bound to dismiss any count.

On July 13, the court considered and adopted the presentence investigation report's recommended findings of fact, and determined the applicable guideline ranges for Taplette's conduct to be six-to-twelve months imprisonment, two-to-three years supervised release, and a fine of $2,000 to $20,000. No fine was imposed because of Taplette's lack of financial resources.

On July 15, 1988, Taplette was found guilty under Count IV only, and sentenced under the sentencing guidelines, 28 U.S.C. § 994(a), to the custody of the Bureau of Prisons for twelve months with two years supervised release, drug rehabilitation with urinalysis, and a $50 special assessment. Taplette appeals this sentence, arguing that the district court in applying the sentencing guidelines wrongly applied an of-

1. The reasoning underlying our holding today has limited applicability. It will apply only to appeals from sentences imposed on counts of conviction resulting from conduct occurring during the period from November 1, 1987, the effective date of the new sentencing guidelines, to January 15, 1988, when those guidelines were revised.

fense level of ten to arrive at a sentencing range of six-to-twelve months, while it should have selected an offense level of four and found a sentencing range of zero-to-four months. Taplette traces this alleged error to the court's totalling of the amounts of cocaine charged in Counts I, II and III and the marijuana charged in Count IV of the indictment to arrive at offense level twelve, reduced by two offense levels for acceptance of responsibility. Taplette argues that because he pled guilty only to Count IV, and was found guilty only on that count, his offense level should have been based solely on the quantity of marijuana involved in Count IV. This would have resulted in offense level six when less than two hundred and fifty grams of marijuana are involved, less two offense levels for acceptance of responsibility. *See* Guideline § 2D1.1(a)(3); Guidelines at 2.39 (October 1987). Taplette claims that his constitutional right to due process has been violated because he has been sentenced for acts that he has not been found guilty of by a jury, nor to which he has pled guilty.

## II

Although Taplette's allegation of error may have superficial appeal, other courts have addressed and rejected virtually identical challenges to the application of the new sentencing guidelines.[2] In *United States v. Guerrero*, 863 F.2d 245 (2d Cir. 1988), a defendant was charged with conspiracy (count 1) and the substantive offense of distributing more 100 grams of cocaine on December 11, 1987 (count 2), and distribution of a small, unspecified quantity of a Schedule I narcotic drug on December 4, 1987 (count 3). His "purchaser" on December 4 had been a government informant. Guerrero pled guilty to count 3, and the government dismissed counts 1 and 2 against him. The prosecutor and defense counsel entered into a stipulation of facts to establish circumstances pertinent to sentencing that disclosed that Guerrero had held a series of conversations with the informant to make arrangements to have Guerrero introduce him to a supplier of heroin. Guerrero acknowledged that he had made the introduction, and then was present during the negotiation and sale of 698 grams of heroin resulting from that introduction.

At sentencing Guerrero argued that the appropriate base level for his offense was twelve, the level prescribed for narcotics offenses involving less than five grams of heroin, which with a two-level reduction for acceptance of responsibility, yielded a base level of ten for his conviction. Offense level ten results in a guideline range of six to twelve months. The prosecution contended that the base offense level should

2. This circuit, in *United States v. Juarez–Ortega*, 866 F.2d 747 (5th Cir.1989) (per curiam), considered a case factually similar to the instant case. Juarez–Ortega was convicted of two counts of distribution of cocaine, and appealed the district court's consideration during sentencing of his possession of a handgun while committing those offenses, on the grounds that the jury had acquitted him of the substantive offense of carrying a firearm during a drug trafficking offense. The district court disregarded the sentencing guideline range for Ortega–Juarez's conduct—twelve to eighteen months—and imposed a sentence of seventy-six months. This circuit affirmed the district court's departure from the guidelines because the sentence given was within the statutorily permissible limits, the facts surrounding Juarez–Ortega's possession of a firearm were not disputed as false or unreliable because a government agent testified that he had seen the firearm in Juarez–Ortega's waistband, and it was not disputed that the firearm was used in connection with drug sales.

Although our opinion affirming the district court's sentence made no explicit reference to the provisions of the new sentencing guidelines which permit an upward departure from the guideline sentencing ranges, and cited no cases postdating the effective date of those guidelines, we simply note that Guideline § 1B1.4 currently allows such a departure. Section 1B1.4 "Information to Be Used in Imposing Sentence (Selecting a Point Within the Guide Range or Departing from the Guidelines)" states: "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." The background to that section makes clear that Congress in enacting the new sentencing guidelines did not intend to place any new limitation on the information that a court could have previously considered in imposing an appropriate sentence. Guidelines at 1.20 (January 15, 1988).

be determined from the quantity involved in the overall scheme in which Guerrero had participated, which resulted, after adjustments, in a guideline range of fifty-one to sixty-three months. The district judge agreed with Guerrero and selected base level ten, but then departed upward from the guidelines and selected a sentence of sixty-five months and a fine of $200,000. The court later reduced this sentence to sixty-three months and $55,000, to keep in line with the sentence that the convicted heroin supplier had received.

The Second Circuit, after a lengthy review of the sentencing guidelines prior to their January 15th amendments, held that the sentencing court should have based the offense level on the larger quantity of drugs in the overall scheme, citing versions of sections 1B1.2 and 1B1.3 in force at the time of Guerrero's offense. The court upheld Guerrero's sentence, though, because the sixty-three-month sentence imposed was within the higher base offense level guideline range. In the alternative, the court noted that even if its interpretation of the guidelines was wrong, in view of the large quantity of narcotics involved in the ultimate sale to the government informant which Guerrero admitted he had facilitated, the district court did not make an unreasonable departure from the guideline range of six to twelve months in selecting a sentence of sixty-three months. 863 F.2d at 250–51.

In *United States v. Ruelas–Armenta,* 684 F.Supp. 1048 (C.D.Cal.1988), a defendant argued that the court could not consider facts outside those inherent in his counts of conviction or those stipulated to at the time of the plea agreement in determining his guideline range. The court did not agree. It noted that

> [s]ubsection 1B1.3(a)(2) states that determination of the guideline range solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, shall be based on "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Crimes, such as defendant's, that fall under § 3D1.2(d)

are therefore governed by § 1B1.3(a)(2). "... This subsection applies to offenses of types for which convictions on multiple counts would be grouped together pursuant to § 3D1.2(d); *multiple convictions are not required.*" Guidelines at 1.18 (January 15, 1988) (emphasis added).

684 F.Supp. at 1051. Although Ruelas–Armenta was convicted only for the possession of a single stolen check, in determining the offense level for his sentence the court took into account the amounts involved in all thirteen stolen checks charged in the indictment and found in the car when his arrest occurred. "[W]hile the conduct regarding the other checks is not contained in the count of conviction, that absence is not a bar to its consideration under subsection (a)(2)." *Id.*

In *United States v. Silverman,* an Ohio district court held that a plea agreement will not preclude consideration of prior unindicted criminal activity in determining the appropriate offense level under the sentencing guidelines, where the sentencing information the judge considers has sufficient indicia of reliability. 692 F.Supp. 788 (S.D. Ohio 1988).

Silverman was indicted for one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count charging travel in interstate commerce to promote a narcotics business enterprise in violation of 18 U.S.C. § 1952. He entered a plea of guilty to the first count, and the government agreed to request a dismissal of the second count of the indictment at the time of sentencing. His probation officer recommended that information concerning Silverman's involvement in narcotics activities prior to his offense of conviction, which occurred on February 15, 1988, be considered as relevant conduct under section 1B1.3(a) for the purposes of determining his base offense level. 692 F.Supp. at 791–92. The court noted that the prior offense, committed in August of 1987, was related to the February 1988 offense, and held that because under the sentencing guidelines the prior offense of distribution constituted part of the same course of conduct or com-

mon scheme or plan as the offense of conviction, it was therefore relevant conduct for the purpose of determining Silverman's offense level under section 1B1.3(a)(2). *Id.* at 793. After finding that it had been demonstrated by a preponderance of the evidence that Silverman had committed the August 1987 offense, the court went forward and considered that offense in calculating his base level offense. *Id.* at 794–95. *Cf. United States v. Smith,* No. 87–20219–4, 1988 WL 142130 (W.D.Tenn. Aug. 26, 1988); *United States v. Moreno,* 710 F.Supp. 1136 (E.D.Mich.1989). The above cases set out the contours of the existing case law on this issue. We turn now to the language of the guidelines.

### III

#### A.

Taplette's allegation of error would be foreclosed by the guidelines themselves had his conduct occurred after January 15, 1988, the date numerous amendments to the sentencing guidelines became effective. *See Guerrero,* 863 F.2d at 249. The current Commentary to the Guidelines, which is to be treated as "the legal equivalent of a policy statement," *see* Guideline § 1B1.7, states that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Guidelines at 1.19 (January 15, 1988). *See also* Guidelines at 2.46, n. 11 (January 15, 1988). The policy behind this rule is that offenses of a certain character

> often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing.... Relying on the entire range of conduct, *regardless* of the number of counts that are alleged *or on which a conviction is obtained,* appears to be the most reasonable approach to writing workable guidelines for these offenses.

Guidelines at 1.19 (January 15, 1988) (emphasis added). *United States v. Ruelas–Armenta,* a California district court case, explains well why allowing the sentencing court to consider relevant conduct relating to other offenses does not render "the whole purpose of plea bargaining null and void":

> [W]hile permitting the consideration of additional information might decrease the incentive to plea bargain in certain cases, it should not in most cases destroy all incentives. First, the court can always decrease the provisional offense level two levels if the defendant demonstrates acceptance of responsibility for his actions.... Second, within each offense level the guidelines still permit the court a considerable range of discretion ... [allowing] the court to consider leniency if it is indicated.... Third, the amount of any fines imposed on the defendant could be influenced by a guilty plea and the subsequent dismissal of additional charges. Fourth, the statutory maximum [sentence] is often decreased by the dismissal of other charges.

684 F.Supp. 1048, 1051–52 (C.D.Cal.1988). *See also Guerrero,* 863 F.2d at 248 (guilty pleas under the new guidelines still reduce a defendant's maximum exposure to the penalties in the counts of conviction).

#### B.

Taplette's conduct, however, occurred prior to the January 15, 1988 amendments. Section 1B1.2 of the guidelines, prior to its amendment, provided that:

(a) The court shall apply *the guideline* in Chapter Two (Offense Conduct) *most applicable to the offense of conviction....*

(b) The court shall determine any applicable specific offense characteristic, victim-related adjustment, *or departure* from the guidelines attributable to offense conduct, according to the principles in § 1B1.3 (Relevant Conduct).

(Emphasis added.) Chapter Two, § 2D1.1(a)(3) would allow only a base offense level of six for Taplette's marijuana offense, the only offense for which he was

convicted. Guidelines at 2.39 (October 1987). The version of section 1B1.3 in effect at that time provided in pertinent part as follows:

*Relevant Conduct*

To determine the *seriousness* of the offense conduct, all conduct, circumstances, and injuries *relevant to the offense of conviction* shall be taken into account.

(a) Unless otherwise specified under the guidelines, conduct and circumstances relevant to the offense of conviction means:

acts or omissions committed or aided and abetted by the defendant, or by a person for whose conduct the defendant is legally accountable, that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction, or (2) are relevant to the defendant's state of mind or motive in committing the offense of conviction, or (3) indicate the defendant's degree of dependence upon criminal activity for a livelihood.

(Emphasis added.) Guidelines at Appendix C.3, "Amendments to the Sentencing Guidelines Manual of October 1987," (June 15 1988). Taking these two sections together, it would appear that, under the former section 1B1.2, the proper guideline to have been applied to Taplette's conduct was that "most applicable to the offense of conviction," count IV. His relevant conduct in committing any other drug offenses can then be considered to determine the seriousness of his conviction offense for purposes of an upward departure beyond the offense guideline range.

 The January 15, 1988 revisions to these sections do indeed make clear now that the guidelines allow the consideration of relevant conduct for which the defendant was not convicted in determining the actual guideline range. *See Guerrero*, 863 F.2d at 250 (revisions to guideline section 1B1.2 "only clarify a meaning that was fairly to be drawn from the original version"). But because it is not absolutely plain to us that under the pre-January 1988 guidelines relevant conduct could be considered in determining Taplette's applicable guideline range, we will not reach the issue of whether the district court misapplied the guidelines in using Taplette's relevant conduct in calculating the base offense level and applicable guideline range under the pre-January 15, 1988 guidelines. *See* 18 U.S.C. § 3742(e)(2). Rather, we prefer to review the district court's sentence as an instance in which relevant conduct was used to justify upward departure from the guidelines. *See* 18 U.S.C. § 3742(e)(3). Such a departure would have been clearly permissible under section 1B1.2(b) of the October 1987 guidelines in effect at the time of Taplette's offense. Section 1B1.2(b) then provided that "[t]he court shall determine any applicable ... departure from the guidelines attributable to offense conduct, according to the principles in § 1B1.3 (Relevant Conduct)." As we have previously noted, section 1B1.3(a)(1) provided that conduct "relevant" to the offense of conviction included acts or omissions of the defendant that are "part of the same course of conduct, or a common scheme or plan, as the offense of conviction." Our particular inquiry in this case therefore must be, first, whether Taplette's transactions, occurring on three separate dates, were "part of the same course of conduct, or a common scheme or plan, as the offense of [his] conviction," section 1B1.2 (Guidelines, October 1987), and, second, whether the district court's sentence imposed outside the range of the applicable sentencing guideline was unreasonable. 18 U.S.C. § 3742(e); *United States v. Mejia-Orosco*, 867 F.2d 216, 217–218 (5th Cir. 1989). We therefore turn to apply these guidelines to the facts of this case.

The undisputed evidence shows that the three drug sales alleged in counts I, II and III of Taplette's indictment were part of the same course of conduct as that alleged in count IV of Taplette's indictment, for which he was convicted. The sales all occurred within three weeks time, and were all made to the same government informant. The conduct charged in counts III and IV actually occurred on the same day as part of the same transaction. Further, the three transactions for which Taplette was indicted were all monitored and recorded on audio tape by postal inspectors, which lends ample indica of reliability to the government's charges against Taplette

in counts I, II and III, and allows the sentencing judge to take those other instances of criminal activity into account in passing sentence. *See Silverman,* 692 F.Supp. at 790.

 We also hold that the district court's upward departure from the guideline range applicable to Taplette's single count of conviction for his marijuana offense was not unreasonable, given the number of related transactions and the quantities involved in each, and we affirm the district court's sentence on this ground. We note that the adjusted range for Taplette's single count is zero to four months; the range for the four counts totalled and adjusted is six to twelve months. A departure of eight months above a four-month maximum guideline sentence was not unreasonable for the quantities that were established in this case. Further, the maximum statutory allowable sentence for Taplette's violation of 21 U.S.C. § 841(a)(1) for the distribution of marijuana, a Schedule I controlled substance, is five years imprisonment, a $250,-000 fine, and two years supervised release. His sentence imposed under the guidelines of twelve months imprisonment, two years supervised release, drug rehabilitation and $50 special assessment was well within that statutory maximum. For these reasons, Taplette's sentence under the new sentencing guidelines is

AFFIRMED.