OPINION
On December 24, 1997, the Tuscarawas County Grand Jury indicted appellant, Harold E. Ickes, on one count of felonious sexual penetration in violation of R.C. 2907.12, one count of rape in violation of R.C. 2907.02 and five counts of gross sexual imposition in violation of R.C. 2907.05. Said charges arose from incidents involving three children, Jarvis Furbay, Tonya Starkey and Diana Jones, all under the age of thirteen. A jury trial commenced on June 1, 1999. The jury found appellant guilty as charged. By judgment entry filed August 25, 1999, the trial court sentenced appellant to a total aggregate term of twenty-six to sixty years in prison. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. WHERE THE STATE'S EVIDENCE IN RAPE PROSECUTION WAS ESSENTIALLY TESTIMONY OF THE VICTIM THAT THE DEFENDANT HAD ORAL SEX WITH HER AND VICTIM DID NOT TESTIFY AS TO THE DEFENDANT PLACING HIS MOUTH ON THE VAGINA, BUT RATHER PLACED IT IN HER VAGINAL AREA SAID CONVICTION IS BASED ON INSUFFICIENT EVIDENCE.
 II. THE COURT ERRED WHEN IT LIMITED CROSS-EXAMINATION OF A RAPE WITNESS.
 III. A THIRTY-TWO (32) MONTH DELAY FROM A CASE BEING PRESENTED TO THE GRAND JURY AND THE ISSUANCE OF AN INDICTMENT WHEN NO FURTHER MEANINGFUL INVESTIGATION OCCURS VIOLATES THE FEDERAL CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.
 IV. THE DEFENDANT'S RIGHT TO AN IMPARTIAL JURY WAS VIOLATED WHEN THE TRIAL COURT DENIED A VALID CHALLENGE FOR CAUSE.
V. THE COURT ERRED IN NOT SEVERING THE COUNTS IN THE INDICTMENT.
 VI. THERE WAS INSUFFICIENT CREDIBLE EVIDENCE PRESENTED AT TRIAL TO CONVICT THE DEFENDANT OF THE CRIME OF FELONIOUS SEXUAL PENETRATION.
 VII. THE TRIAL COURT DENIED THE DEFENDANT A FAIR TRIAL BY ARBITRARILY LIMITING VOIR DIRE.
 I
Appellant claims his conviction for the rape of Ms. Jones was against the manifest weight and sufficiency of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Appellant was convicted of raping Ms. Jones when she was ten to thirteen years old. Ms. Jones is now thirty-one years old. T. at 293. R.C. 2907.02 defines rape as follows: (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 (a) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 "Sexual conduct" is defined in R.C. 2907.01(A) as follows: (A) `Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
Appellant argues there was insufficient evidence of sexual conduct. Ms. Jones testified and described appellant's conduct as sexual manipulation and touching of private parts that always ended in oral sex. T. at 294, 296, 298. Ms. Jones described "oral sex" as "[m]outh on my vaginal area." T. at 298. When Ms. Jones confronted him in front of others, appellant told her "that he never touched Tanya but he couldn't deny me." T. at 308. The trial court charged the jury on sexual conduct and defined "cunnilingus" as "a sexual act committed with the mouth and the female sexual organ." T. at 396. The trial court also charged the jury on gross sexual imposition as a lesser included offense on this count in the indictment. T. at 397-398. Appellant argues the description of "mouth on my vaginal area" was insufficient to establish cunnilingus. We disagree Ms. Jones's description of appellant's actions, coupled with her describing the act as "oral sex", was insufficient. Penetration is not required to establish cunnilingus. State v. Bailey (1992), 78 Ohio App.3d 394. Upon review, we find sufficient evidence to support the conviction for the rape of Ms. Jones, and no manifest miscarriage of justice. Assignment of Error I is denied.
 II
Appellant claims the trial court erred in limiting the cross-examination of Ms. Jones. We disagree. This court may not reverse a trial court's decision with respect to the scope of cross-examination absent an abuse of discretion. Calderon v. Sharkey (1982), 70 Ohio St.2d 218. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Defense counsel questioned Ms. Jones about receiving drug counseling. T. at 316. Once Ms. Jones acknowledged seeing a drug counselor, the trial court denied any further inquiry. Id. Defense counsel approached the bench and argued the following at side bar: I think that the credibility of this witness is at issue at this present time, her ability to remember, her ability to accurately remember what happened in the past. If this woman has a drug or alcohol problem I think that this issue should be — I should be allowed to explore this. At the present time then if the Court is going to stop me from going further then I would proffer that I believe she will talk about drug problems, she will talk about an alcohol problem. We believe the testimony would be that this would be over an extended period of time, that possibly there were drugs found in the house, possibly (inaudible) life styled. Therefore I think that all of this goes to whether or not the jury is going to believe her or her ability to accurately remember and that would be my proffer.
T. at 316-317. Thereafter, the trial court instructed the jury to "disregard the innuendo" regarding "any drug related issue of this witness." T. at 317. Evid.R. 608(A) governs opinion and reputation evidence of character and states as follows: The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
Specific instances of conduct, as it pertains to truthfulness, generally "may not be proved by extrinsic evidence." Evid.R. 608(B). However, a witness may be impeached either by examination of the witness or by extrinsic evidence to show a "defect of capacity, ability, or opportunity to observe, remember, or relate." Evid.R. 616(B). The issue of Ms. Jones's drug or alcohol problems do not relate to the time when the incidents giving rise to the indictment occurred (when Ms. Jones was ten to thirteen years old). There is no evidence of any alleged impairment at that time. The implication was that any possible impairment was during Ms. Jones's adult life. In addition, Ms. Jones was not testifying about incidents that had been suppressed in her memory. Ms. Jones's testimony indicates she has always remembered the incidents but chose not to relate or discuss them. Upon review, we find the trial court did not abuse its discretion in limiting the cross-examination of Ms. Jones on this issue. Assignment of Error II is denied.
 III
Appellant claims the thirty-two month delay from grand jury (April of 1995) to indictment (December of 1997) violated his rights to a speedy trial. We disagree. As cited by appellant, the controlling case on pre-indictment delay is Barker v. Winger (1972), 407 U.S. 502 [Barker v. Wingo (1972) 407 U.S. 514]. In State v. Selvage (1997), 80 Ohio St.3d 465, 467, the Supreme Court of Ohio examined the Barker case stating as follows: In Barker, the United States Supreme Court stated that `[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis.' Id. at 530, 92 S.Ct. at 2192,33 L.Ed.2d at 116-117. The court identified four factors which courts should assess in determining whether the right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. at 530, 92 S.Ct. at 2192,33 L.Ed.2d at 117. Although the court stated that no one factor is controlling, id. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, it noted that the length of the delay is a particularly important factor:
 `The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.' (Emphasis added and footnote omitted.) Id. at 530-531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.
The Selvage court at 468 also discussed the United States Supreme Court opinion of Doggett v. United States (1992), 505 U.S. 647, wherein the Doggett court discussed the effects of delay: However, in Doggett, the court distinguished MacDonald [United States v. (1982), 456 U.S. 1], noting that `[o]nce triggered by arrest, indictment, or other official accusation, however, the speedy trial enquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that Barker recognized.' (Emphasis added.) Doggett, 505 U.S. at 655,112 S.Ct. at 2692, 120 L.Ed.2d at 530.
We note Barker specifically speaks to the delay from public accusation to indictment: Because the Court broadly assays the factors going into constitutional judgments under the speedy trial provision, it is appropriate to emphasize that one of the major purposes of the provision is to guard against inordinate delay between public charge and trial, which, wholly aside from possible prejudice to a defense on the merits, may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'
Barker at 537 (White, J., concuring), quoting United States v. Marion (1971), 404 U.S. 307, 320.
Appellant testified at the 1995 grand jury proceeding so there can be no claim of diminished recollection. Under the facts sub judice, there was no public accusation until the 1997 indictment. The grand jury heard evidence in 1995 but no true bill issued from that proceeding. The grand jury that returned the indictment was the grand jury from "the Term of September in the Year one thousand nine hundred and ninety-seven." See, Indictment filed December 24, 1997. The grand jury in 1997 was a completely different deliberating body than the grand jury in 1995. Upon review, we find no delay tantamount to a constitutional violation of appellant's rights to a speedy trial. Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in denying his challenge for cause on juror David Hough. We disagree. The standard of review in determining the propriety of a trial court's decision not to disqualify a juror on a challenge for cause is abuse of discretion. Berk v. Matthews (1990), 53 Ohio St.3d 161; Blakemore. Appellant argues Mr. Hough displayed "a state of mind evincing enmity or bias toward the defendant." See, Crim.R. 24(B)(9). Mr. Hough indicated he had been raped as a child. T. at 76. When the trial court inquired as to whether or not he could be fair and impartial, Mr. Hough responded "I just wonder if I would be completely impartial. I don't know." T. at 77. The prosecutor questioned Mr. Hough further and the following exchange took place:
 MR. STEPHENSON: * * * Mr. Hough, you said a few things that indicated that perhaps you're concerned about your ability to give Mr. Ickes a fair trial. Are you somewhat apprehensive right now about being involved in this type of case?
 MR. HOUGH: In this particular type of case. I think it's something that you put in the back of your mind for a lot of years that seems to come to the forefront when (inaudible).
MR. STEPHENSON: So it's bothering you at this point.
MR. HOUGH: Of course. I would be abnormal if it didn't I suspect.
 MR. STEPHENSON: I agree. And do you think it might affect your ability to be fair to Mr. Ickes because of —
 MR. HOUGH: I don't know. I really and truly don't know. I'm just saying that I thought that information should be reported.
T. at 81-82.
The trial court asked the following general question to all the jurors: * * * So I'm going to end this discussion, Mr. Latanich, with a general question to all twelve of you. Do you understand that Mr. Ickes has no obligation to testify in this case? Everybody is suggesting they understand that. Do you also further understand that even if you would hope that he would testify in order to have a complete presentation of the evidence, quote, unquote `complete', that if he does not you will set aside that disappointment, you will decide whether or not the State's evidence is sufficient to prove his guilt beyond a reasonable doubt or not. If it is you would convict; if not you would acquit. Do all of you agree that you would do that?
T. at 121.
The jurors collectively answered in the affirmative. Id. We note defense counsel never challenged Mr. Hough for cause. Defense counsel used the last peremptory challenge to remove Mr. Hough. T. at 132-133. Appellant must raise the issue in the trial court to preserve the error for review. State v. William (1977), 51 Ohio St.2d 112. We cannot predict how the trial court may have reacted to a challenge for cause nor can we theorize any prejudice to appellant when Mr. Hough did not sit. Upon review, we find the trial court did not err in failing to sua sponte remove Mr. Hough for cause. Assignment of Error IV is denied.
 V
Appellant claims the trial court erred in not severing the counts of the indictment. We disagree. Appellant was charged with seven felony sexual crimes against three different children, all of whom were family members. Not only were there three different victims, but the times of the offenses were consecutive and did not overlap. The incidents with Ms. Jones occurred from 1978 to 1980. The incidents involving Ms. Starkey occurred in June of 1981 and June of 1986. The incidents with Mr. Furbay occurred in 1989 and 1991. Crim.R. 14 governs relief from prejudicial joinder and states in pertinent part as follows: If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.
Appellant has the burden to establish the following: To prevail on his claim that the trial court erred in denying his motion to sever, the defendant has the burden of demonstrating three facts. He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. State v. Torres (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus.
State v. Schaim (1992), 65 Ohio St.3d 51, 59. In Schaim at 59, Justice Douglas set forth the following procedure in making a determination of prejudice: When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. State v. Hamblin (1988), 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476,481-482; Drew v. United States (C.A.D.C. 1964), 331 F.2d 85. If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further. Drew v. United States, 331 F.2d at 90. See United States v. Riley (C.A.8, 1976), 530 F.2d 767 (inquiry need not proceed further). For this reason, we first address the extent to which evidence of each of these crimes would be admissible in the other trials if the counts were severed as requested by the defendant.
The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See State v. Curry (1975), 43 Ohio St.2d 66, 68, 72 O.O.2d 37, 38, 330 N.E.2d 720, 723. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible.
The legislative statutes in a prosecution of sex offenses as it pertains to this analysis are R.C. 2907.02(D) and R.C. 2907.05(D) which state in pertinent part as follows: Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
R.C. 2945.59 provides for the admissibility of "other acts" as follows: In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
From our review of the evidence, the trial court ruled the acts against the three family members were admissible under R.C.2945.59 and Evid.R. 404. We find this because 1) the acts were against family members which began when the children were between the ages of five to seven years old (T. at 182, 235, 296), 2) the acts occurred when the children stayed overnight at appellant's residence without their respective parents (T. at 180, 236, 294) and 3) all the acts occurred at the same address and when the children were sleeping. These facts clearly indicate a "scheme, plan or system" negating any claim of accident. Further, the acts were consecutive in nature, beginning with the oldest child and following through to the youngest child. Each victim testified separately. T. at 179, 232, 290. The issues were clearly laid out for the jury, that each count and victim should be considered from its own evidence. T. at 386, 404. In addition, appellant admitted to the sexual conduct with Ms. Jones and other family members. T. at 269, 270, 307. Given the facts sub judice, we find the trial court did not err in denying the severance motion. Assignment of Error V is denied.
 VI
Appellant claims his conviction for the felonious sexual penetration of Ms. Starkey was against the manifest weight and sufficiency of the evidence. We disagree. The standard for testing the sufficiency and weight of the evidence has been set forth in Assignment of Error I. Jenks; Martin; Thompkins. In addition, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182. At the time of the incidents, R.C.2907.12 defined felonious sexual penetration as follows: (A)(1) No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
As set forth in the bill of particulars filed April 20, 1998, the "defendant did, without privilege to do so, insert any part of his body (his finger) into the vaginal cavity of another, Tanya Starkey." Appellant argues Ms. Starkey's testimony was not specific enough and cites to her testimony on cross-examination wherein she stated she was "almost positive that he did insert his fingers into my vaginal area." T. at 259. Appellant argues Ms. Starkey's testimony was not worthy of belief because of her recent recall of the incidents and her nightmares. Ms. Starkey specifically testified that "[i]t wasn't accidental. He meant to do what he was doing. He was putting his fingers inside of me in my vaginal area, rubbing, massaging." T. at 236. She stated she specifically recalled appellant's breath "had a coffee nasty smell to it" and it was her seventh birthday. T. at 237, 238. Ms. Starkey admitted to a recent recall of the events on her seventh birthday and to reoccurring nightmares of sexual abuse and appellant. T. at 258. She admitted to not remembering the entire events, but testified she remembered the touching. T. at 259. Ms. Starkey remembers appellant inserting "[a]bout half finger" into her vagina. T. at 262. Upon review, we find sufficient evidence to support the conviction for the felonious sexual penetration of Ms. Starkey, and no manifest miscarriage of justice. Assignment of Error VI is denied.
 VII
Appellant claims the trial court erred in limiting voir dire. We disagree. Appellant argues he should have been permitted to re-examine jurors replacing challenged jurors on questions already posed. Appellant also argues he should have been permitted to further develop to the jurors the concept of appellant's right not to testify. The control and management of voir dire rests first with the trial court. State v. Bedford (1988), 39 Ohio St.3d 122. The trial court as a neutral party to the proceedings is best to develop and question jurors on sensitive issues such as the right against self incrimination. Thereby, no party sets in stone a preconceived opinion on the issue. In addition, the permissive language of Crim.R. 24(A) does not give unfettered questioning to the parties: Any person called as a juror for the trial of any cause shall be examined under oath or upon affirmation as to his qualifications. The court may permit the attorney for the defendant, or the defendant if appearing pro se, and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the state and defense to supplement the examination by further inquiry.
The rule establishes that the examination is controlled by the trial court. Once the trial court examines the jurors, any questioning by the parties is supplemental. Upon review, we fail to find any error in the voir dire procedure. Assignment of Error VII is denied.
The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.
HOFFMAN, P.J. and EDWARD, J. CONCUR.